542 F.2d 829
 20 UCC Rep.Serv. 381
 The FOUR SONS BAKERY, INC., a Colorado Corporation, d/b/a
Vienna Pletzel Co., Plaintiff-Appellee,
v.
Sidney DULMAN, Individually and d/b/a Bakers Machinery
Company, and Joe Cohen& Company, an Illinois
Corporation, Defendants-Appellants.
 No. 75-1810.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Sept. 20, 1976.
Decided Oct. 18, 1976.
 
 Herman Rothstein, Commerce City, Colo., for defendants-appellants.
 Sheldon E. Friedman, Denver, Colo. (Joseph J. Stollar, Denver, Colo., on the brief), for plaintiff-appellee.
 Before HILL, McWILLIAMS and BARRETT, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 This is an appeal from a judgment against sellers of certain used bakery equipment, wherein The Four Sons Bakery, Inc., was allowed to revoke its acceptance of the equipment and recover the purchase price and incidental expenses in the amount of $50,425.22 from Sidney Dulman, individually and as Bakers Machinery Company (Dulman), and $9,355 from Joe Cohen and Company (Cohen). The appellants, Dulman and Cohen, assert as a basis for their appeal that the trial judge (1) erroneously applied C.R.S.1973 § 4-2-608, Colorado Uniform Commercial Code, in allowing revocation of acceptance; (2) misapplied Colorado law in finding an implied warranty of fitness in sale of the used goods; and (3) granted excessive and unwarranted monetary awards.
 
 
 2
 The Four Sons Bakery, Inc. (hereinafter referred to in the surname of its owner and manager, Joseph Francis), was an enterprise based in Denver, Colorado. Its business was the preparation, baking, and merchandising of a snack food item known as a "pletzel." At its best, a pletzel is a flat wafer or bread, seasoned inter alia with onion flakes and poppy seeds. The formula is not revealed, but it appears that requirements for baking pletzels are somewhat unique. The dough is more viscous than ordinary pastry dough. Proper baking requires high initial temperature to thwart bubbling. Francis was a man of considerable business experience in the field of retail merchandising but was a novice in the baking business when he commenced his pletzel enterprise in 1969. Some time in 1972, Francis commenced efforts to expand pletzel production. Central to his expansion was a need for a larger oven. In April, 1972, Francis attended a bakery equipment show in Denver and on that occasion became acquainted with Avie Cohen, representative of appellant Joe Cohen and Company, a corporation whose business is sales of new and used bakery equipment. There was at that meeting some discussion of Francis' need for an oven of larger capacity. Francis later contacted Cohen regarding the purchase of an oven, and Cohen proposed a meeting with Dulman.
 
 
 3
 Dulman, Cohen, and Francis met in New York in June, 1972. Both Cohen and Dulman represented to Francis that they had considerable knowledge of the baking business. Francis explained as best he could his requirements as to size and performance for a replacement oven, and Dulman proposed that Francis look at a used oven at the Webster Bakery in New York. The oven was for sale by virtue of the closing of that business. Both Cohen and Dulman assured Francis that the Webster oven would meet his needs and "give him a good bake." Francis initially agreed to purchase the oven and, after some negotiations, gave Dulman an $8,000 check as payment in full for the oven. Thereafter, Francis became concerned with problems of dismantling and transporting the oven, which was of substantial size. Francis was further concerned with the problem of fuel for the oven. It was an oil burner, and, after consultation with his architect in Denver, Francis determined that it would be more inexpensively operated if converted to burn natural gas. Dulman told Francis of one Robert Shively, with whom Dulman had worked before, and represented him to be a capable bakery engineer, able to effect the conversion from oil to gas, dismantle the oven, and reassemble it in Francis' bakery in Denver.
 
 
 4
 After some thought, Francis decided against the purchase and requested his money back from Dulman. Dulman returned Francis' check but continued to encourage the sale. He proposed purchase of the oven, converted to gas, delivered and assembled in Denver by Shively, worn parts replaced with new, complete with a conveyor belt, and guaranteed for 90 days, for a price of $25,500. Francis eventually agreed and sent first payment of $8,000 to Dulman. As may be inferred from the filing of this lawsuit, things did not go as planned. The oven was first fired in Denver in January, 1973. Many pages of the trial transcript may be summarized in the statement that the oven did not work properly. The conveyor belt was not included; pans jammed in the oven; capacity of production was far from that anticipated; the heat was uneven, with the result that a substantial portion of Francis' pletzels was either raw or burnt.
 
 
 5
 The fact that Dulman was in New York and Francis in Denver complicated matters. Shively came to Denver, initially to assemble the oven and later to try to repair it. Upon Dulman's oral authorization, Francis made payments directly to Shively, hired local laborers to assist Shively, purchased parts, equipment and services in an effort to correct myriad problems with the oven. Francis was in telephonic communication with Dulman and met with him in person on numerous occasions over the period during which these events transpired. Dulman's stock answer to Francis' concerns was that he would "settle up" when all was done. There were continuing assurances that the defects would be corrected. Francis baked his last pletzel in April, 1975, the oven never having been made to operate as Dulman had represented it would.
 
 
 6
 In the summer of 1972, Dulman adventured jointly with Harvey Slaten in the purchase of a defunct bakery in California. They convinced Francis of his need for a mixer and that the one in the California bakery was the one he needed. It would, they told him, mix pletzel dough and pass F.D.A. inspection. Francis bought the mixer in August, 1972, for $3,750, to subsequently discover that one of its paddles was broken and leaked rusty water into the dough mixture. It hence fell somewhat short of F.D.A. standards. In late 1972 and early 1973, Dulman sold Francis several other items of bakery equipment, each represented to be suitable for preparation of Pletzels. Francis bought an extruder for $3,000, a dough hoist for $1,350, a make-up table and sheeter for $7,500, 24 racks for $1,020, and 800 bun pans for $800. Of these items, 704 of the bun pans and all of the racks were usable. The remaining equipment was either not suitable for pletzels or not suitable for anything.
 
 
 7
 Francis filed this suit in April, 1973, against Dulman, Cohen, and Slaten, pleading in the alternative revocation of acceptance or damages. The trial was held in July, 1975. Before the close of Francis' evidence, he elected to pursue his claim for revocation of acceptance, return of the purchase price, and incidental expenses. Judgment was rendered against Dulman in the amount of $50,425.22, representing the purchase price of the oven and other equipment and the incidental expenses incurred in dismantling, transporting, reassembling, and attempting repair of the various items. Judge Winner found that Cohen's involvement was limited to the sale of the oven, as distinguished from its installation in Denver, and rendered judgment against him in the amount of $9,355, representing the purchase price and freight charges therefor.[1]
 
 
 8
 C.R.S.1973 § 4-2-608, a section of the Colorado Uniform Commercial Code, sets forth a buyer's remedy of revocation of acceptance of non-conforming goods.[2] The section provides that revocation must occur within a reasonable time. C.R.S.1973 § 4-2-607 provides as follows:
 
 
 9
 4-2-607. Effect of acceptance . . . .
 
 
 10
 (2) Acceptance of goods by the buyer precludes rejection of the goods accepted and, if made with the knowledge of a nonconformity, cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured; . . . .
 
 
 11
 Dulman and Cohen challenge the trial court's finding that Francis timely revoked his acceptance of the goods. Determination of reasonableness of time for revocation is one of fact, to be made on the unique circumstances of each case. C.R.S.1973 § 4-1-204; Stroh v. American Recreation & Mobile Home Corp., 35 Colo.App. 196, 530 P.2d 989 (1975). Findings of fact are not to be set aside on appeal unless clearly erroneous. F.R.Civ.P. 52(a).
 
 
 12
 While it is true that Francis used the oven and other equipment, to the extent that it was usable, for a substantial period of time, it is also established in evidence that Dulman gave Francis ongoing assurances that the defects would be corrected. Work continued to be done, under Dulman's authorization, toward the goal of curing defects in the various items. The goal was never reached. Francis filed suit within a few months after the oven was fired but on the strength of Dulman's assurances agreed to continuances. The fact of a delay, standing alone, does not establish the unreasonableness thereof. The trial judge was satisfied, after considering the evidence, that Francis' revocation was timely. We are not convinced that his determination was clearly erroneous.
 
 
 13
 Dulman and Cohen allege error in the trial judge's conclusion that, under Colorado law, the sale of used goods carries implied warranties of fitness. We find it unnecessary to treat this question of state law for the reason that the trial judge also found breach of express warranty as to each item sold to Francis for which claim is here made.[3] Given the sufficiency of the trial court's unchallenged finding of breach of express warranty as a ground for allowing revocation of acceptance, we need not express an opinion as to the applicability of any theory of implied warranty to the facts of the present case.
 
 
 14
 Dulman asserts that the amount of the monetary award was excessive in three particulars: (1) that Dulman is not liable for expenses incident to dismantling and installing the oven, in that his contract with Francis was for the sale of the oven "as is" in New York; (2) that he is entitled to a set-off for the reasonable value of the use of the oven by Francis; and (3) that the award included items for which Francis made no claim.
 
 
 15
 The parties treat the first point in terms of the agency of Shively, the bakery engineer. Dulman argues that Shively was not his agent but was an independent contractor working for Francis, and Francis contends that Shively was Dulman's agent. The question is not properly one of agency law but of contract law. Did the contract between Francis and Dulman call for the sale of the oven "as is" for $8,000 or converted, delivered, and installed in Francis' bakery for $25,500? The trial judge found the latter. In raising the question here, Dulman again challenges a determination of fact by the trial judge. Rule 52(a) of the Federal Rules of Civil Procedure provides the ground rules for our inquiry.
 
 
 16
 The trial court acknowledged conflicts in the evidence. Francis, for instance, made direct payments of approximately $8,000 to Shively. This method of payment could well have been, as the judge found, one of convenience warranted by geography. Dulman was in New York; Francis and Shively were in Denver. Dulman's bookkeeping belies his contention that his contract with Francis was for $8,000 for the simple sale of the oven. He lists $25,500 for the oven as a part of his gross sales. The oven was eventually invoiced on two documents, one for $8,000 and the other for $17,500. This procedure was followed as a convenience to Francis. He sought to have the oven valued at $8,000 for his tax purposes. The significant fact is that both invoices were from Dulman. There was substantial evidence from which the judge could conclude that Francis' contract with Dulman was for $25,500 for the oven installed, operating, and warranted to bake pletzels. We do not find clear error in that determination.
 
 
 17
 Dulman next argues entitlement to a set-off for the value of Francis' use of the oven, a theory not advanced at trial. The matter should have been brought by way of counterclaim. It involves a new theory and new questions of fact. Dulman cites no unusual circumstances that would warrant divergence from the rule that new claims may not be considered for the first time on appeal. We decline to consider it. Hanley v. Chrysler Motors Corp., 433 F.2d 708 (10th Cir. 1970).
 
 
 18
 Dulman finally contends that the judgment was excessive in that it included $1,724 for which Francis neither claimed nor proved entitlement. Some of the equipment which Francis bought from Dulman worked. Of the 800 bun pans, 704 were usable. All of the 24 racks purchased were usable. The judgment against Dulman, however, included the purchase price of these items.
 
 
 19
 Francis argues that the question was not raised below. That argument, whether or not correct, would not stand in the way of our consideration of the trial judge's determination, if clearly erroneous. F.R.Civ.P. 52(a).
 
 
 20
 Francis made no plea as to the 24 racks. His sixth claim alleged that 96 of the bun pans were defective, but made no request for relief as to the remaining 704. He produced no evidence of his right to recover for these items. We are thus left with the requisite firm conviction that a mistake has been made in the inclusion of $1,724 for these items in the judgment against Dulman. Kelson v. United States, 503 F.2d 1291 (10th Cir. 1974).
 
 
 21
 The judgment is affirmed except as to the inclusion in the monetary award of the purchase price for the racks and 704 bun pans, in the total amount of $1,724. That amount is deducted from the judgment of the trial court. As modified, the judgment is affirmed.
 
 
 
 [1]
 Harvey Slaten was dismissed as a defendant for want of jurisdictional amount
 
 
 [2]
 4-2-608. Revocation of acceptance in whole or in part
 (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
 (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
 (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
 (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
 (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.
 
 
 [3]
 From the opinion of Judge Winner, p. 11:
 "Plaintiff claims on both express and implied warranty. I find that both Dulman and Cohen expressly warranted the oven to be fit for the purpose of baking pletzels; that Dulman and Slaten expressly warranted the mixer to be fit for the purpose of mixing pletzel dough; that Dulman expressly warranted the extruder to be fit for the purpose of extruding pletzel dough; that Dulman expressly warranted the sheeter to be fit for the purpose of sheeting pletzel dough, and that he expressly warranted the hoist to be fit for the purpose of hoisting pletzel dough. As I have already said, all of these express warranties were breached. . . ."