## SIERRA DIESEL INJECTION SERVICE, a Nevada corporation, Plaintiff,

v.

## BURROUGHS CORPORATION, INC., a Delaware corporation, Defendant.

### No. CV–R–84–535–ECR.

United States District Court,
D. Nevada.

Jan. 28, 1987.

---

Haase, Harris & Morrison, Reno, Nev., for plaintiff.

Brown & Bain, P.A., Phoenix, Ariz., Lionel Sawyer & Collins, Reno, Nev., for defendant.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

The defendant in this action has filed a motion asking this Court to reconsider its order denying the defendant's motion for summary judgment, entered on October 14, 1986. 648 F.Supp. 1148. The basis for this motion is the allegation that the Court neglected relevant Nevada case law when denying that motion, and that it did not consider part of the defendant's legal theory that was alleged in the summary judgment motion. In that the facts of the case were stated fully in the Court's original order, and because the defendant has not challenged the Court's characterization of them, they will not be restated here.

## RELEVANT NEVADA CASE LAW

■ The defendant claims that this Court erred in denying the motion for summary judgment regarding the statute of limitations on Nevada fraud claims, in that it did not apply the case which defendant claims is controlling on this subject, *Howard v. Howard*, 69 Nev. 12, 239 P.2d 584 (1952). This case, contends the defendant, indicates that a claim for fraud accrues for statute of limitations purposes on the date of discovery of facts which, in the exercise of proper diligence, would have enabled the plaintiff to learn of the defendant's fraud, regardless of the date of the actual discovery of the fraud. In this sense, the defendant maintains that this Court erred in holding that a genuine issue of material fact exists regarding the date on which the statute began to run.

The defendant, however, overlooks later Nevada case law, which indicates that statutes of limitations questions are to be determined by jury or bench trial when the pertinent facts are subject to opposing inferences. In *Millspaugh v. Millspaugh*, 96 Nev. 446, 611 P.2d 201 (1980), for example,

the plaintiff had asked the defendant, her son, to prepare a document which would convey her home to her children upon her death. The defendant presented her with a document in 1971 which created a joint tenancy among all parties, which he nonetheless represented as the sort of instrument she had requested. In 1976, the plaintiff discovered this discrepancy, and brought suit in 1978 to cancel the deed. The defendant moved for summary judgment contending that the statute of limitations had expired in 1975, long before the suit was filed. *Id.*, at 201–02; *see also* NRS § 11.190(3)(d). In essence, the defendant argued that the statute began to run in 1972 when the plaintiff consulted another attorney about making a will. At this consultation, the plaintiff had told her attorney about the document, and the way she thought that it operated. She did not show the instrument to her attorney, nor did they have any further discussion concerning it. *Id.*, at 202.

The Nevada Supreme Court found that these facts evidenced the existence of a genuine issue of material fact as to when the claim accrued. "The pertinent question here," the court stated, "is whether [defendant] should have learned, through the exercise of proper diligence, of the fraud or mistake when she met with her attorney in 1972, thereby triggering the statute of limitations." *Id.* Whether the defendant's brief conversation with her attorney regarding the status of the deed was sufficient to charge her with knowledge of the fraud or mistake was not conclusively resolved by the evidence before the court, in that equally plausible, opposite inferences could be drawn from the 1972 meeting. *Id.* In view of this fact, the court remanded the question to the lower court for resolution at trial.

In Nevada, therefore, the question of what constitutes sufficient knowledge to place a party under an affirmative duty to discover the fraud or mistake is normally a jury question. *Id.* As this Court stated in the earlier order denying summary judg-

ment, one plausible interpretation of the facts of this case is that the plaintiff did not have sufficient knowledge of facts constituting defendant's alleged fraud until 1982, at which time an independent expert was hired. The report of that expert was apparently the first indication from an unbiased professional source that the defendant's computer systems would never be able to perform the tasks as represented by the defendant. Indeed, up until 1982, the defendant had steadfastly promised that the machines would be able to perform as lauded, and had also promised to repair any difficulties experienced with the machines. Although it is possible that a reasonable person would suspect fraud from the first moment the machine failed to operate, it is equally possible that a reasonable person would not think that he had been defrauded until the report of the independent expert was in. These equally possible inferences indicate the existence of a genuine issue of material fact, which precludes summary judgment. *Id.* Defendant's motion for reconsideration on this point is thus groundless.

## EXCLUSION OF WARRANTY

■ Defendant's second contention in the motion for reconsideration deals with the alleged express waiver of warranty by the plaintiff. This point and all later contentions in the present motion were raised in the initial motion for summary judgment, and were heard at oral argument before the Magistrate. The Magistrate, however, did not consider them in her report and recommendation. Curiously, the defendant did not object to their absence in its objections to the Magistrate's recommendation. For this reason, this Court did not consider waiver of warranty or the other arguments in the earlier order. 28 U.S.C. § 636(b)(1) makes clear, however, that this Court must review the Magistrate's recommendation *de novo*, in spite of the parties' lack of objection. Even though serious waste of judicial resources is involved in the reservation of these objections, this Court must still consider them.

The defendant urges that Nevada statutes and case law preclude plaintiff's reliance on implied warranty claims, in that a conspicuous waiver of all warranties was stated on the parties agreements. NRS § 104.2316(2) provides that:

> ... to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify an implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, "There are no warranties which extend beyond the description on the face hereof."

NRS § 104.2316(2). To exclude implied warranties of fitness, therefore, Nevada law requires that the waiver be in writing, and that it also be conspicuous. *Id.*

The defendant claims that the bold, capital letters alone are enough in Nevada to make a waiver conspicuous. In support of this contention, it cites *Sierra Creek Ranch, Inc. v. J.I. Case*, 97 Nev. 457, 634 P.2d 458 (1981). In this case, the defendant had sold a used wheel loader to the plaintiff and had warranted the power train, engine and transmission for 90 days after the sale. The parties' written agreement included a disclaimer, written in bold, capital letters, which indicated that all other warranties, including implied warranties of fitness and merchantability were nonexistent. The trial court had held that this language, so written, was sufficient to exclude all implied warranties.

The state supreme court agreed. It found that "a disclaimer, written conspicuously, in capital letters, was sufficient to preclude the existence of any implied or express oral warranties." *Id.*, at 460. In that the trial court had found the form and language of this disclaimer conspicuous, the higher court was unwilling to disturb that finding on appeal, and held all implied warranties disclaimed. *Id.*

The defendant would interpret this case to mean that all disclaimers, written in

bold, capital letters, are conspicuous as a matter of law. The *Sierra Ranch* decision, however, cannot be stretched quite this far. Initially, the supreme court's definition of the term "conspicuous" is very confusing, in that the court used that same term in its definition. *Id.* The upshot of this usage is that the court ends up saying: "What is conspicuously written is conspicuous." This sort of definition does not provide much guidance for later courts to follow. Moreover, the trial court in this case had held the disclaimer to be conspicuous after a full trial on the merits, and not on a motion for summary judgment. The facts are not generously stated in the opinion, but it is possible that the trial court based its holding regarding the conspicuousness of the disclaimer on more than the mere form and content of language alone.

In addition, the *Sierra Ranch* case fails to discuss NRS § 104.1201(10). This section indicates that

> [a] term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: Negotiable Bill of Lading) is "conspicuous." Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color ...

NRS § 104.1201(10). As other courts have noted,

> "[s]ection 1–201(10) [of the UCC] does give guidance as to what shall be construed as conspicuous, but it is important to note that comment 10 to that section states that the methods listed therein are only *some* of the methods a seller may use to make the terms of clauses 'attention calling.' Comment 10 then states 'the test is whether attention can reasonably be expected to be called to it.'"

*Collins Radio Co. of Dallas v. Bell,* 623 P.2d 1039, 1049 (Okl.App.1980) *citing,* U.C.C. § 1–201(10). The question in this case, therefore, resolves itself also to what a reasonable person ought to have noticed from this document. *See FMC Finance Corp. v. Murphree,* 632 F.2d 413, 419 (5th Cir.1980); *Thermo King Corp. v. Strick*

*Corp.,* 467 F.Supp. 75, 77 (W.D.Pa.1979), *aff'd,* 609 F.2d 503 (3rd Cir.1979).

Other courts have found that disclaimers of this sort are not conspicuous if the disclaimer is written on the back of the instrument, with no reference on the front directing the reader to the disclaimer. *See Bowers Mfg. Co., Inc. v. Chicago Mach. Tool Co.,* 117 Ill.App.3d 226, 72 Ill.Dec. 756, 453 N.E.2d 61 (1983); *Deaton, Inc. v. Aeroglide Corp.,* 99 N.M. 253, 657 P.2d 109 (1982). Indeed, the Nevada supreme court has stated in connection with waiver of express warranties that such a purported waiver, printed on the back of a sales contract, is without effect unless the buyer actually knows the existence of the waiver. *Sellman Auto, Inc. v. McCowan,* 89 Nev. 353, 513 P.2d 1228, 1230 (1973). In addition, it is the whole document, liberally construed in favor of the plaintiff, that must be examined in relation to the disclaimer's conspicuousness, in which type size, ink color, and contrasting type are relevant factors in the determination, but not the sole arbiters. *J & W Equipment, Inc. v. Weingartner,* 5 Kan.App.2d 466, 618 P.2d 862, 865–55 (1980).

In view of these factors, it is possible that a reasonable person might not have noticed this disclaimer. Initially, only the equipment sale agreement was written entirely in bold, capital letters. For the software and support agreement, a significant portion of the warranty paragraph was written in lower case, regular type. Neither warranty was written in a different color of ink than the rest of the page, nor were they set off from the rest of the text by a boundary. In addition, both waivers were located on the back of the page. The face of the equipment contract, while it does admonish the reader to read the reverse side, does not specifically direct his attention to the warranty section. Although the face of the software agreement does do this, it has already been noted that part of that paragraph, to which attention was directed, was in lower case type. A genuine issue of material fact exists regarding the conspicuousness of the waivers

of the implied warranty in this case, in that a reasonable person might not have noticed these waivers. For that reason, summary judgment is not proper.

## PAROL EVIDENCE

◼ Defendant further argues that the plaintiff's allegations regarding any oral warranties or promises made before the contracts were signed must be disregarded by virtue of the parol evidence rule, codified at NRS § 104.2202. This section of the U.C.C. provides that

[t]erms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

1. By course of dealing or usage of trade (NRS § 104.1205) or by course of performance (NRS § 104.2208); and
2. By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

NRS § 104.2202. This section of the Code contemplates a multifactor analysis. First, the court must determine whether the writing presented to the court is "intended by the parties as a final expression of their agreement to such terms as are included therein." *Id., see Norwest Bank Billings v. Murnion,* —— Mont. ——, 684 P.2d 1067, 1071 (1984); *see also Amoco Production Co. v. Western Slope Gas Co.,* 754 F.2d 303, 308 (10th Cir.1985), *S.M. Wilson & Co. v. Smith International, Inc.,* 587 F.2d 1363, 1370 (9th Cir.1978); *Interform Co. v. Mitchell,* 575 F.2d 1270, 1274–78 (9th Cir. 1978). If the court determines that the parties did not intend the writing to be a final expression of their agreement with respect to the terms contained therein, then parol evidence of prior and contemporaneous agreements may be considered by the court. *Id.*

◼ The defendant argues that the merger clause contained in the contracts in this case establishes as a matter of law that the writings are the final expression of the parties' agreements, and that the restrictions of the rule therefore come into play. The authorities hold that merger clauses such as this one are strong evidence of integration, but that they are not necessarily conclusive. In *O'Neil v. International Harvester Co.,* 40 Colo.App. 369, 575 P.2d 862 (1978), for example, the buyer of a truck brought an action against the seller and assignee for rescission of the installment purchase contract, for damages for breach of express and implied warranties, and for fraud. The defendants argued that all of the plaintiff's causes of action were barred by the terms of the contract itself which conspicuously disclaimed all warranties not stated in the agreement, and which contained a merger clause which purported to make that writing the final agreement of the parties. Because of the conspicuous disclaimer clause and the express merger clause, the defendants argued that the plaintiff was prevented from introducing any evidence of warranties which were not included in the writing. The trial court had agreed with the defendant, and found that all evidence of oral warranties was made inadmissible by virtue of the integration clause in the contract.

The court of appeals reversed the lower court. Initially, it found that the trial court had properly found no issue of fact as to the warranty disclaimer clause, in that the plaintiff had actually read the clause. This waiver only affected the implied warranties, however. *Id.,* at 865. The trial court had erred in this case by failing to take evidence on the parties intent regarding the finality of the writing. In this case, the court found, the plaintiff had alleged the existence of oral warranties prior to the execution of the written agreement, as well as conduct following the sale which tended to show that such warranties were indeed made. Because of these facts, the court found that there was

a genuine issue of material fact as to the parties' intent regarding integration of the writing, in spite of the existence of a merger clause. *Id.* In view of the existence of such a genuine fact issue, summary judgment was not proper, and the lower court's ruling was reversed. *See also, Amoco Production, supra.*

In the present case, there also appears to be a genuine issue of fact regarding the parties' intent. Although the merger clause does lend weight to the finding of integration here, the plaintiff also claims that oral warranties were made prior to the execution of the contract. Further, the plaintiff also contends that the defendant made numerous efforts to repair the computer system to comply with those alleged warranties. These allegations indicate the existence of a genuine issue of material fact, in that the parties' intent regarding the integration is not clear. Whereas it is possible that these contracts are fully integrated, the evidence presently before the court also permits the opposite conclusion. As in *O'Neil*, therefore, summary judgment on parol evidence grounds is not proper.

FRAUD

■ In addition, Nevada case law holds that the parol evidence rule may not operate to exclude evidence of fraud in the inducement of contract, even where the court finds an integrated agreement. *See Havas v. Haupt*, 94 Nev. 591, 583 P.2d 1094, 1095 (1978). *See also Oak Industries, Inc. v. Foxboro Co.*, 596 F.Supp. 601, 607 (S.D.Cal.1984). Thus, parol may always be used to show fraud on the inducement of the contract, even if there has been a valid integration, in that fraud in the inducement invalidates the entire contract. *Id.* The plaintiff must therefore be allowed to present evidence of fraud regardless of the possible integration of the writing.

The defendant, however, seeks to avoid the fraud exception to the rule by moving for summary judgment on the issue of fraud itself. In this regard, the defendant claims that all of the alleged misrepresentations it made to the plaintiff were opinions, and not statements of fact. In that statements of opinion are not actionable under the Nevada law of fraud, the defendant contends that no genuine issue of material fact exists as to all of the fraud counts. *See Clark Sanitation, Inc. v. Sun Valley Disposal Co.*, 87 Nev. 338, 487 P.2d 337, 339 (1971). This rule recognizes that a certain amount of "puffing" is present in virtually every commercial transaction, and that such statements of opinion must be allowed to pass outside the scrutiny of the courts. *Id.* As to whether a statement is mere "puffing," or whether it is an actual factual representation, however, it seems that the context and circumstances in which the statements are made is crucial.

In *Jeska v. Mulhall*, 71 Or.App. 819, 693 P.2d 1335 (1985), for example, the plaintiffs had purchased certain real property from the defendant. During the course of negotiations, the defendant had told the plaintiffs that the parcel was "a lot of property for the money." *Id.*, at 1337. After the sale was consummated, the plaintiffs found that the parcel was worth considerably less than what they paid for it, and brought an action for fraud. The trial court dismissed the complaint, in that it found the defendant's statement to be mere opinion as to value of the property, and not fact. *Id.*

The Oregon appellate court reversed. Although it agreed that statements of opinion are not actionable as fraud, it further noted that

> statements of opinion regarding quality, value, or the like, may be considered as misrepresentations of fact, that is, of the speaker's state of mind, if a fiduciary relation exists between the parties ... or where the parties are not on an equal footing and do not have equal knowledge or means of knowledge....

*Id., citing Holland v. Lentz*, 239 Or. 332, 345, 397 P.2d 787 (1964). Thus, the court noted that "[t]o whom, with what knowledge and in what context a defendant makes a statement bears on whether a statement of opinion is a 'mere opinion of value' or an actionable 'misrepresentation

**1378**

of fact.' " *Id.* In this case, the court found that a possible inference from the facts was that the defendant was fully aware that the plaintiffs were not going to get anything of value for their money. Because of the issue of fact regarding the nature of the statement, the court found summary judgment inappropriate. *Id.*

■ Summary judgment is similarly inappropriate in this case on the fraud counts. Whereas the defendant claims that all the statements which it made were mere puffing, it appears to the Court that in the proper circumstances, all of these statements could be reasonably understood as statement of fact, rather than of opinion. Specifically, the defendant's agents are reported to have represented that the computer system would put the plaintiff's inventory, receivables, and invoicing under complete control. This statement, when coupled with the fact that the plaintiff represents itself to be a neophyte in the field of office computers, leads the Court to find that a genuine issue of material fact does exist regarding the factual nature of these statements. Summary judgment is therefore improper on the fraud counts.

REVOCATION OF ACCEPTANCE

The defendant finally maintains that summary judgment is proper on all contract and warranty counts, in that the plaintiff failed to revoke its acceptance of the defective goods within a reasonable time. Nevada law provides that a buyer of goods may revoke his acceptance of goods "within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects." NRS § 104.2608(2). Unless the revocation is timely, therefore, the buyer forfeits his possible actions against the seller. *Id.* In addition, Nevada statutes require that any exercise of ownership by the buyer over rejected goods is wrongful against the seller. NRS § 104.2602(2).

In the present case, the defendant argues that the plaintiff's attempt to revoke its acceptance of the B–80 unit was not made within a reasonable time, in that the revocation came some six years after the unit was installed. In addition, the defendant argues that the revocation of acceptance for the B–90 unit was faulty, in that the plaintiff continued to operate it, thereby exercising ownership over it, after the revocation.

■ Defendant's arguments overlook the cases which indicate that time for revocation of acceptance will be tolled while the seller attempts repairs. In view of the buyer's obligation to act in good faith, and to afford the seller a reasonable opportunity to cure any defect in the goods, revocation of acceptance is not barred when the buyer has reasonably waited for the seller to repair the goods. *See Ford Motor Credit Co. v. Harper,* 671 F.2d 1117, 1124 (8th Cir.1982). In addition, the buyer of goods does not lose the right of revocation where his complaints about the goods are met by the seller's repeated assurances that the goods will be brought up to standard. *See Four Sons Bakery, Inc. v. Dulman,* 542 F.2d 829, 832 (10th Cir.1976). *Ybarra v. Modern Trailer Sales, Inc.,* 94 N.M. 249, 609 P.2d 331, 332 (1980); *Jorgensen v. Pressnall,* 274 Or. 285, 545 P.2d 1382, 1385 (1976).

■ In the present case, the defendant both attempted to repair the B–80 unit for a number of years, and assured the plaintiff that the goods would ultimately be able to perform as originally expected. Whether the plaintiff waited a reasonable time while defendant attempted repairs is not clear from the facts. It does seem, however, that one could conclude that the plaintiff was justified in awaiting repairs until after the report of the independent expert was in. The existence of this interpretation of the facts indicates a genuine issue of material fact, which precludes summary judgment on these grounds.

■ In addition, the cases also indicate that the buyer may use and possess the goods after revocation of acceptance, where there have been numerous unsuc-

cessful attempts at repair. *See Jacobs v. Rosemont Dodge-Winnebago South,* 310 N.W.2d 71 (Minn.1981). This rule is a necessary implication from the Code provisions which allow the seller a reasonable time in which to cure defects. *See* NRS § 104.-2508; *see also Jacobs, supra.* If the buyer were not allowed a reasonable time after the seller's cure in which to test any repairs made, the buyer would never know whether the goods had been brought up to standard. *Id.* Therefore, reasonable possession after revocation of acceptance must be allowed for the benefit of both seller and buyer, so as to allow for repairs.

In the present case, it appears that the defendant was either promising or attempting to repair the defective B-90 unit in the time period after the plaintiff's revocation of acceptance. Indeed, these repair promises extended up until the report of the independent expert was tendered in 1982. The plaintiff may thus have acted reasonably in possessing the goods until that date, in that repairs or promises to repair appear to have been going on constantly during this period. At the very least, there is a genuine issue of fact as to the plaintiff's possession in this time period, which also precludes summary judgment.

As noted above, however, the question of conspicuousness of waiver and integration of contracts are not jury questions, but are rather for the Court to decide. NRS §§ 104.1201(10) and 104.2202. In view of this fact, the Court shall set an evidentiary hearing so as to dispose of these issues before trial.

IT IS, THEREFORE, HEREBY ORDERED that the defendant's motion for reconsideration is DENIED.

IT IS FURTHER ORDERED that the issue of the conspicuousness of the waiver of the implied warranty of fitness and the warranty of merchantability and the integration of the written agreements shall be set for evidentiary hearing on Monday, February 23, 1987, at 1:30 o'clock P.M. Each side shall be limited to one hour in its total presentation.