ARTHUR R. WADDELL AND ROSWITHA M. WADDELL, APPELLANTS, *v.* L.V.R.V. INC., DBA WHEELER'S LAS VEGAS RV, RESPONDENT.

L.V.R.V. INC., DBA WHEELER'S LAS VEGAS RV, APPELLANT, *v.* ARTHUR R. WADDELL; ROSWITHA M. WADDELL; AND COACHMEN RECREATIONAL VEHICLE COMPANY, INC., RESPONDENTS.

No. 43149

January 19, 2006 125 P.3d 1160

*Garcia-Mendoza & Snavely, Chtd.*, and *Eva Garcia-Mendoza*, Las Vegas, for Appellants/Cross-Respondents Waddells.

---

*Beckley Singleton, Chtd.*, and *Daniel F. Polsenberg*, Las Vegas; *Nelson Law Foundation, Inc.*, and *Sharon L. Nelson*, Las Vegas, for Appellant/Cross-Respondent L.V.R.V. Inc.

*Michael A. Rosenauer*, Reno, for Respondent Coachmen Recreational Vehicle Company, Inc.

Before MAUPIN, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, GIBBONS, J.:

This is an appeal and cross-appeal from a district court judgment allowing revocation of acceptance of a contract and an order awarding attorney fees and costs. Respondent/cross-appellant L.V.R.V. Inc., D/B/A Wheeler's Las Vegas RV (Wheeler's) sold a 1996 Coachmen Santara motor home (the RV) to appellants/cross-respondents Arthur R. Waddell and Roswitha M. Waddell (the Waddells). The Waddells noticed numerous problems with the RV and "continually" had to return it to Wheeler's service department for repairs. Eventually, the Waddells stopped attempting to have Wheeler's make repairs and filed a complaint seeking to revoke their acceptance of the RV or, in the alternative, money damages. Wheeler's answered the complaint and filed a third-party complaint seeking indemnification from respondent Coachmen Recreational Vehicle Company, Inc. (Coachmen). After a bench trial, the district court granted judgment in favor of the Waddells and Coachmen.

On appeal, Wheeler's argues that (1) the district court erred in allowing the Waddells to revoke their acceptance, (2) the district court abused its discretion by admitting two documents into evidence, (3) the district court erred in denying Wheeler's motion for attorney fees, and (4) the district court erred in denying indemnification from Coachmen. The Waddells argue on cross-appeal that the district court erred in denying them (1) computerized research costs and (2) post-judgment interest on their attorney fees award.

### FACTS

In 1996, the Waddells served jointly as president of the Las Vegas area Coachmen Association Camping Club. During the course of that group's meetings, the Waddells spoke with Tom

Pender, Wheeler's sales manager, about upgrading from the motor home they then owned to a "diesel pusher" motor coach. As a result of that conversation, Pender took the Waddells to the Wheeler's lot and showed them a 1996 Coachmen Santara model diesel pusher coach.

The Waddells test-drove and eventually agreed to purchase the RV and an extended warranty. Before they took possession of the RV, the Waddells requested that Wheeler's perform various repairs. The Waddells' request included a service on the RV's engine cooling system, new batteries, and alignment of the door frames. Wheeler's told Arthur Waddell that the repairs had been performed as requested. The Waddells took delivery of the RV on September 1, 1997.

The Waddells first noticed a problem with the RV's engine shortly after they took possession of it. They drove the RV from Las Vegas to Hemet, California. On the return trip, the entry door popped open and the RV's engine overheated while ascending a moderate grade to such a degree that Mr. Waddell had to pull over to the side of the road and wait for the engine to cool down.

When the Waddells returned from California, they took the RV back to Wheeler's for repairs. Despite Wheeler's attempts to repair the RV, the Waddells continually experienced more problems with the RV, including further episodes of engine overheating. Between September 1997 and March 1999, Wheeler's service department spent a total of seven months during different periods of time attempting to repair the RV.

On June 9, 2000, the Waddells filed a complaint in district court seeking both equitable relief and money damages. Wheeler's answered the complaint and ultimately filed a third-party complaint against Coachmen seeking equitable indemnification and contribution.

Following a three-day bench trial, the district court issued its findings of fact, conclusions of law, and judgment. The district court concluded that the RV's nonconformities substantially impaired its value to the Waddells. The district court allowed the Waddells to revoke their acceptance of the RV and ordered Wheeler's to return all of the Waddell's out-of-pocket expenses, but further concluded that Wheeler's was not entitled to indemnification from Coachmen. Following entry of judgment, the district court awarded the Waddells $15,000 in attorney fees, entered supplemental findings of fact and conclusions of law, issued an amended judgment, entered a separate order denying post-judgment interest on the attorney fee award, and denied the Waddells' motion to retax their costs to include computerized research fees. This timely appeal and cross-appeal followed.

## DISCUSSION

Wheeler's argues that the district court erred in allowing the Waddells to revoke their acceptance of the RV because the Waddells failed to prove that the RV suffered nonconformities that substantially impaired its value. We disagree.

The district court found that despite Wheeler's good-faith attempts to repair the RV, the nonconformities persisted and rendered the RV unfit for its intended use. Some of those nonconformities identified by the district court included: the bedroom air conditioning does not cool, the front air conditioning does not cool, the dash heater does not blow hot air, RV batteries do not stay charged, and chronic engine overheating. The district court concluded that these nonconformities and others substantially impaired the RV's value to the Waddells and that the Waddells had revoked their acceptance of the RV within a reasonable time.

### Substantial impairment

NRS 104.2608(1) provides that a buyer may revoke his acceptance if the item suffers from a "nonconformity [that] substantially impairs its value *to him*" and (a) the buyer accepted the goods on the understanding that the seller would cure the nonconformity or (b) the buyer was unaware of the nonconformity and the nonconformity was concealed by the difficulty of discovery or by the seller's assurances that the good was conforming. (Emphasis added.)

We have never before determined when a nonconformity substantially impairs the value of a good to the buyer. Other jurisdictions treat this determination as an issue of fact,[1] which "is made in light of the 'totality of the circumstances' of each particular case, including the number of deficiencies and type of nonconformity and the time and inconvenience spent in downtime and attempts at repair."[2]

The Supreme Court of Oregon has established a two-part test to determine whether a nonconformity, under the totality of the circumstances, substantially impairs the value of the goods to the buyer. The test has both an objective and a subjective prong:

---

[1]*See, e.g., Frontier Mobile Home Sales, Inc. v. Trigleth*, 505 S.W.2d 516, 517 (Ark. 1974); *Rester v. Morrow*, 491 So. 2d 204, 209 (Miss. 1986); *McCullough v. Bill Swad Chrysler-Plymouth*, 449 N.E.2d 1289, 1294 (Ohio 1983).

[2]*Fortin v. Ox-Bow Marina, Inc.*, 557 N.E.2d 1157, 1162 (Mass. 1990) (quoting *Rester*, 491 So. 2d at 210).

Since [the statute] provides that the buyer may revoke acceptance of goods ''whose nonconformity substantially impairs its value *to him*,'' the value of conforming goods *to the plaintiff* must first be determined. This is a subjective question in the sense that it calls for a consideration of the needs and circumstances of the plaintiff who seeks to revoke; not the needs and circumstances of an average buyer. The second inquiry is whether the nonconformity in fact substantially impairs the value of the goods to the buyer, having in mind his particular needs. This is an objective question in the sense that it calls for evidence of something more than plaintiff's assertion that the nonconformity impaired the value to him; it requires evidence from which it can be inferred that plaintiff's needs were not met because of the nonconformity.[3]

Since Nevada, like Oregon, adopted Uniform Commercial Code § 2-608 verbatim, we conclude that this test applies to NRS 104.2608. Accordingly, we adopt the Supreme Court of Oregon's two-part test for determining whether a nonconformity substantially affects the good's value to the buyer under NRS 104.2608(1).

### Subjective value to the Waddells

Arthur Waddell testified that he purchased the RV to enjoy the RV lifestyle. Before purchasing the RV, the Waddells owned similar vehicles that they used both as a residence and for camping trips. In fact, Mr. Waddell testified that he and his wife intended to sell their house and spend two to three years traveling around the country.

Mr. Waddell further testified that he shopped at Wheeler's based on Wheeler's advertisements. Marlene Wheeler, president and chief operating officer, testified that Wheeler's advertising encouraged the purchase of an RV to find unlimited freedom. When Mr. Waddell spoke with Tom Pender, sales manager at Wheeler's, about upgrading to an RV for those purposes, Pender told him that he had an RV on the lot that would meet his needs.

---

[3]*Jorgensen v. Pressnall*, 545 P.2d 1382, 1384-85 (Or. 1976) (footnote omitted), *quoted with approval in McGilbray v. Scholfield Winnebago, Inc.*, 561 P.2d 832, 836 (Kan. 1977); *see also Milicevic v. Mercedes-Benz USA, LLC*, 256 F. Supp. 2d 1168, 1176 (D. Nev. 2003) (applying a two-part test that addressed both objective and subjective considerations); *Haight v. Dales Used Cars, Inc.*, 87 P.3d 962, 966 (Idaho Ct. App. 2003) (applying a similar two-part test).

Mr. Waddell's testimony demonstrates that the RV's subjective value to the Waddells was based on their ability to spend two or three years driving the RV around the country. Thus, we must consider whether the RV's nonconformities substantially impaired the value of the RV based on the Waddells' particular needs.[4]

### Objective impairment

Mr. Waddell testified that as a result of the RV's defects, he and his wife were unable to enjoy the RV as they had intended. Mr. Waddell further testified that the RV's engine would overheat within ten miles of embarking if the travel included any climbing. As a result of the overheating, the Waddells were forced to park on the side of the road and wait for the engine to cool down before continuing. Consequently, the RV spent a total of 213 days, or seven months and one day, at Wheeler's service department during the eighteen months immediately following the purchase. This testimony is sufficient to demonstrate an objective, substantial impairment of value.

The Supreme Court of Ohio has stated that a nonconformity effects a substantial impairment of value if it "shakes the buyer's faith or undermines his confidence in the reliability and integrity of the purchased item."[5] The Supreme Judicial Court of Massachusetts has recognized that "even cosmetic or minor defects that go unrepaired . . . or defects which do not totally prevent the buyer from using the goods, but circumscribe that use . . . can substantially impair the goods' value to the buyer."[6] The United States District Court for the District of Nevada recently reiterated that " 'the [seller's] inability to correct defects in [motor] vehicles creates a major hardship and an unacceptable economic burden on the consumer.' "[7]

In this case, the chronic engine overheating shook the Waddells' faith in the RV and undermined their confidence in the RV's reliability and integrity.[8] Not only did this problem make travel in the RV unreliable and stressful to the Waddells, the overheating made travel in the vehicle objectively unsafe.

Accordingly, we conclude that substantial evidence exists to support revocation of acceptance under NRS 104.2608(1).

---

[4]*Jorgensen*, 545 P.2d at 1384-85.

[5]*McCullough*, 449 N.E.2d at 1294; *see also Rester*, 491 So. 2d at 210-11.

[6]*Fortin*, 557 N.E.2d at 1162.

[7]*Milicevic*, 256 F. Supp. 2d at 1176 (quoting *Berrie v. Toyota Motor Sales, USA, Inc.*, 630 A.2d 1180, 1181 (N.J. Super. Ct. App. Div. 1993)).

[8]*See Rester*, 491 So. 2d at 210-11; *McCullough*, 449 N.E.2d at 1294.

### Reasonable time for revoking acceptance

Wheeler's argues that the Waddells should not have been allowed to revoke their acceptance because they did not attempt to revoke within a reasonable time after purchasing the RV. We disagree.

Under NRS 104.2608(2), "[r]evocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects." The statute further provides that revocation "is not effective until the buyer notifies the seller of it."[9] We have never before determined a reasonable timeline for revocation of acceptance. However, other jurisdictions have held that the reasonable time determination "depends upon the nature, purpose and circumstances of the transaction."[10] The reasonable time determination is generally considered to be an issue of fact for the trial court.[11]

Here, the district court found that the Waddells were entitled to revoke their acceptance since they notified Wheeler's of their intent to revoke within a reasonable time. Mr. Waddell testified that he first noticed the RV's defects immediately after his purchase. Mr. Waddell took the RV to Wheeler's service department whenever he noticed a defect and Wheeler's always attempted, often unsuccessfully, to repair the RV. In September 1998, Mr. Waddell took the RV to Wheeler's after continued engine overheating. As a result of these defects, Wheeler's service department kept the RV for approximately seven months of the eighteen months that the Waddells owned the RV. Roger Beauchemin, a former employee of Wheeler's service department, testified that Wheeler's was unable to repair some of the defects, including the engine's chronic overheating problems. In January 1999, the Waddells again brought the RV to Wheeler's complaining of per-

---

[9]NRS 104.2608(2).

[10]*DeVoe Chevrolet-Cadillac v. Cartwright*, 526 N.E.2d 1237, 1240 (Ind. Ct. App. 1988); *see also Golembieski v. O'Rielly R.V. Center, Inc.*, 708 P.2d 1325, 1328 (Ariz. Ct. App. 1985) (noting that "[r]easonableness of the time for revocation is a question of fact unique to the circumstances of each case").

[11]*See, e.g., Golembieski*, 708 P.2d at 1328; *Frontier Mobile Home Sales, Inc. v. Trigleth*, 505 S.W.2d 516, 517 (Ark. 1974); *Chernick v. Casares*, 759 S.W.2d 832, 834 (Ky. Ct. App. 1988); *Oda Nursery, Inc. v. Garcia Tree & Lawn, Inc.*, 708 P.2d 1039, 1042 (N.M. 1985); *Purnell v. Guaranty Bank*, 624 S.W.2d 357, 359 (Tex. App. 1981).

sistent engine overheating. The Waddells demanded a full refund of the purchase price in March 1999 and sought legal counsel. Through counsel, the Waddells wrote to Wheeler's during the summer of 1999 to resolve the matter. Wheeler's did not respond to these inquiries until early 2000. Unable to resolve the dispute with Wheeler's, the Waddells revoked their acceptance of the RV in June 2000.

The seller of nonconforming goods must generally receive an opportunity to cure the nonconformity before the buyer may revoke his acceptance.[12] However, as the Supreme Court of Mississippi has recognized, the seller may not "postpone revocation in perpetuity by fixing everything that goes wrong."[13] Rather, "[t]here comes a time when . . . [the buyer] is entitled to say, 'That's all,' and revoke, notwithstanding the seller's repeated good faith efforts to [cure]."[14]

Furthermore, the seller's attempts to cure do not count against the buyer regarding timely revocation. The United States District Court for the District of Nevada has held that the "time for revocation of acceptance will be tolled while the seller attempts repairs."[15] Tolling the reasonable time for revocation of acceptance is appropriate given "the buyer's obligation to act in good faith, and to afford the seller a reasonable opportunity to cure any defect in the goods."[16]

The Waddells gave Wheeler's several opportunities to repair the defects before revoking their acceptance. Because Wheeler's was unable to repair the defects after a total of seven months, the Waddells were entitled to say "that's all" and revoke their acceptance, notwithstanding Wheeler's good-faith attempts to repair the RV.[17] Also, the reasonable time for revocation was tolled during the seven months that Wheeler's kept the RV and attempted to repair the defects.[18] Accordingly, the district court's determination is supported by substantial evidence and is not clearly erroneous.[19]

---

[12]*See Rester*, 491 So. 2d at 210.

[13]*Id.*

[14]*Id.*

[15]*Sierra Diesel Injection Service v. Burroughs Corp.*, 651 F. Supp. 1371, 1378 (D. Nev. 1987).

[16]*Id.*

[17]*Rester*, 491 So. 2d at 210.

[18]*Sierra Diesel*, 651 F. Supp. at 1378.

[19]*Edwards Indus. v. DTE/BTE, Inc.*, 112 Nev. 1025, 1031, 923 P.2d 569, 573 (1996).

*Wheeler's motion for attorney fees*

Wheeler's argues that the district court erred in denying its motion for attorney fees because the Waddells recovered only on equitable grounds and failed to obtain a money judgment in excess of the $25,000 offer of judgment that Wheeler's proffered before trial. We disagree.

Under NRCP 68(a),[20] either party may serve an offer of judgment to settle the matter "[a]t any time more than 10 days before trial." Further, NRCP 68(f) provides for penalties if the offeree rejects the offer, proceeds to trial, "and fails to obtain a *more favorable judgment.*" (Emphasis added.) Specifically, NRCP 68(f)(2) provides that "the offeree shall pay the offeror's post-offer costs, applicable interest on the judgment from the time of the offer to the time of entry of the judgment and reasonable attorney's fees, if any be allowed, actually incurred by the offeror from the time of the offer."

The district court must consider four factors in awarding penalties pursuant to NRCP 68(f).[21] The third factor, which is most relevant to this case, requires a consideration of "whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith."[22]

The district court properly concluded that the Waddells' decision to proceed to trial was neither unreasonable nor in bad faith. Further, the district court was not entitled to penalize the Waddells under NRCP 68(f)(2) because the Waddells failed to obtain a more favorable judgment than the $25,000 offer. Though the Waddells succeeded only on an equitable claim, their revocation of acceptance resulted in the recovery of $113,680.57 that they had spent on the RV.[23] This recovery is clearly more favorable to the

---

[20]NRCP 68 was amended effective January 1, 2005, during the pendency of this appeal. The amendments do not change our consideration of the appeal.

[21]*Beattie v. Thomas*, 99 Nev. 579, 588-89, 668 P.2d 268, 274 (1983).

[22]*Id.*

[23]This figure represents:

1. The sum of $78,857.22 which constitutes 78 payments made by the [Waddells] from the date of the purchase through April 1, 2004 . . .
2. The following sums of money:
 a. $249.50 constituting the document fee paid at the time of purchase;
 b. $5,313.45 constituting the sales tax paid at the time of purchase;
 c. $20,080.40 constituting the net trade-in allowance at the time of purchase;
 d. $3,576.00 constituting casualty insurance premiums paid on the vehicle;
 e. $2,589.00 constituting the Department of Motor Vehicles registrations;
 f. $2,995.00 which constitutes the extended service contract; [and]
3. $20.00 which constitutes the title fee . . . .

Waddells than the offer of judgment because (a) they recovered more than $25,000 from Wheeler's and (b) they were not required to keep and make payments on the RV, which they could not use for the purposes they intended when they bought it. Accordingly, the district court properly denied Wheeler's motion for attorney fees.

### Indemnification

Wheeler's argues that the district court erred in denying its claim for indemnification from Coachmen for its liability to the Waddells. We disagree.

We have repeatedly held that "findings of fact . . . supported by substantial evidence, will not be set aside unless clearly erroneous."[24] The district court concluded that the indemnification contract between Coachmen and Wheeler's applied only to manufacture and design defects. The district court further concluded that the only defect relating to manufacture and design was a faulty mud flap that had been repaired without further incident.

Mr. Waddell testified that the front, left mud flap had melted during several trips, but that Wheeler's was eventually able to correct that problem. There is no evidence in the record demonstrating irreparable design or manufacturing defects. Accordingly, we conclude that the district court's decision is supported by substantial evidence and is not clearly erroneous.[25]

### Computerized legal research costs

On cross-appeal, the Waddells argue that the district court abused its discretion by denying them computerized research costs. We disagree.

"The determination of allowable costs is within the sound discretion of the trial court."[26] Only reasonable costs may be awarded.[27] " '[R]easonable costs' must be actual and reasonable, 'rather than a reasonable estimate or calculation of such costs.' "[28] The district court did not abuse its discretion in denying costs for

---

[24]*Edwards Indus.*, 112 Nev. at 1031, 923 P.2d at 573.

[25]We have considered Wheeler's other assignments of error and find them without merit.

[26]*Bobby Berosini, Ltd. v. PETA*, 114 Nev. 1348, 1352, 971 P.2d 383, 385 (1998).

[27]NRS 18.005.

[28]*Bobby Berosini*, 114 Nev. at 1352, 971 P.2d at 385-86 (quoting *Gibellini v. Klindt*, 110 Nev. 1201, 1206, 885 P.2d 540, 543 (1994)).

computerized legal research because those costs were not sufficiently itemized.

*Post-judgment interest on attorney fees*

The Waddells argue that they were entitled to post-judgment interest on their attorney fees award. We agree.

NRS 17.130(1) provides for interest to be granted on "all judgments and decrees, rendered by any court of justice, for any debt, damages or costs." We have never directly addressed the issue of whether the recipient of an attorney fees award is entitled to post-judgment interest on that award. However, we have held that a district court "judgment" includes both damages and costs; thus, prejudgment interest is available for costs incurred by the prevailing party.[29]

The prevailing view among other jurisdictions is that attorney fees awards are entitled to post-judgment interest.[30] The Supreme Court of Ohio recently recognized that "the modern trend . . . favors the awarding of post-judgment interest on attorney fees as a general rule."[31] That court adopted the "modern trend" because "an award of post-judgment interest on attorney fees properly recognize[s] the time value of money by making the prevailing party truly whole and preventing the nonprevailing party from enjoying the use of money that no longer rightfully belongs to it."[32]

Further, in *Powers v. United Services Automobile Association*, we held that the prevailing party is entitled to post-judgment interest on punitive damages awards.[33] We explained that "[t]he purpose of post-judgment interest is to compensate the plaintiff for loss of the use of the money awarded in the judgment" without regard to the various elements that make up the judgment.[34] For the same reason, we conclude that the prevailing party may recover post-judgment interest on an attorney fees award.

---

[29]*Id.* at 1355, 971 P.2d at 387-88; *Gibellini*, 110 Nev. at 1209, 885 P.2d at 545.

[30]*See, e.g., Isaacson Structural Steel Co. v. Armco Steel*, 640 P.2d 812, 818 (Alaska 1982); *Fischbach & Moore, Inc. v. McBro*, 619 So. 2d 324, 324-25 (Fla. Dist. Ct. App. 1993); *Nardone v. Patrick Motor Sales, Inc.*, 706 N.E.2d 1151, 1152 (Mass. App. Ct. 1999); *Parker v. I&F Insulation Co.*, 730 N.E.2d 972, 979 (Ohio 2000); *Aguirre v. AT & T Wireless Services*, 75 P.3d 603, 605 (Wash. Ct. App. 2003).

[31]*Parker*, 730 N.E.2d at 977.

[32]*Id.* at 978; *see also Isaacson*, 640 P.2d at 818.

[33]114 Nev. 690, 705-06, 962 P.2d 596, 605-06 (1998).

[34]*Id.* at 705, 962 P.2d at 605.

## CONCLUSION

The district court did not err in allowing the Waddells to revoke their acceptance of the RV within a reasonable time because chronic engine overheating problems substantially impaired the RV's value to the Waddells. The district court also properly denied Wheeler's motion for attorney fees. Further, substantial evidence supports the district court's determination that Wheeler's was not entitled to indemnification from Coachmen.

Additionally, the district court did not abuse its discretion in denying the Waddells' computerized research costs. Finally, the Waddells are entitled to post-judgment interest on their attorney fees award. Accordingly, we affirm the district court's judgment with the exception of post-judgment interest. We reverse as to that issue only and remand for further proceedings consistent with this opinion.

MAUPIN and HARDESTY, JJ., concur.