575 P.2d 862 (1978)
Albert M. O'NEIL, Plaintiff-Appellant,
v.
INTERNATIONAL HARVESTER COMPANY, a Delaware Corporation, and International Harvester Credit Corporation, a Delaware Corporation, Defendants-Appellees.
No. 77-382.
Colorado Court of Appeals.
February 2, 1978.
*864 Davies & Saint-Veltri, Robert S. Berger, Denver, for plaintiff-appellant.
Holland & Hart, Gregory A. Eurich, Richard W. Comfort, Jr., Denver, for defendants-appellees.
RULAND, Judge.
The plaintiff, Albert M. O'Neil, appeals from a summary judgment dismissing his complaint against the defendants, International Harvester Company and International Harvester Credit Corporation, and from a summary judgment in favor of the defendants on their first counterclaim. The judgments were made final pursuant to C.R.C.P. 54(b). We affirm in part, reverse in part, and remand for further proceedings.
The pleadings, interrogatories, and depositions in this case disclose the following pertinent facts. On August 22, 1975, O'Neil entered into a "Retail Installment Contract" with the defendant, International Harvester Company, for the purchase of a used diesel tractor and trailer. International Harvester Company assigned its interest in the contract to the defendant, International Harvester Credit Corporation. The contract provided, inter alia:
"Each USED motor vehicle covered by this contract is sold AS IS WITHOUT WARRANTY OF ANY CHARACTER expressed or implied, unless purchaser has received from seller a separate written warranty executed by seller."
No written warranties were received by O'Neil. The contract also provided:
"Purchaser agrees that this contract . . . which he has read and to which he agrees contains the entire agreement relating to the installment sale of said property and supersedes all previous contracts and agreements between purchaser and seller relating to the order or sale of said property except as to any written agreements between purchaser and seller concerning warranty."
Pursuant to the contract, O'Neil paid $1,700 as a down payment, but failed to make any of the required monthly payments.
According to O'Neil's deposition, shortly after the purchase his employee drove the truck to a location in the mountains for the purpose of hauling firewood to Denver. He had numerous problems with the truck, causing delays which resulted in the loss of his permit to cut and remove firewood, as well as loss of business. A representative of International Harvester agreed to pay one-half of the cost of certain repairs. After several attempts to have the defendants repair the truck during the next month, O'Neil returned it to the defendants, but the defendants refused to rescind the sale.
O'Neil admitted reading the contract, including the warranty exclusion provision. He stated, however, that he understood the provision to mean that the tractor and trailer would be in the condition represented by the defendants' salesman. According to O'Neil, the salesman represented that the truck had been recently overhauled and would be suitable for operation in the mountains; later, when he returned the truck, O'Neil overheard another employee of the defendant International Harvester Company say to the salesman, inter alia, "I told you not to sell him Inman's truckInman took every piece of used equipment off his other fleet of trucks and stuck it on that one."
In his complaint O'Neil sought both rescission of the contract and damages, alleging that International Harvester was liable for breach of express warranties, an implied warranty of fitness for a particular purpose, and fraud. Defendants answered denying that any warranties were made to O'Neil or that any fraud was committed in the sale and, insofar as pertinent here, defendants counterclaimed for the balance due under the contracts.
O'Neil first contends that the trial court improperly granted summary judgment against him on his claim that the defendants breached an implied warranty of fitness for a particular purpose relative to the capability of the truck. In response, the defendants assert that summary judgment was proper because this warranty was effectively disclaimed in the contract. We agree with the defendants.
*865 Pursuant to the Uniform Commercial Code, one way an implied warranty of fitness for a particular purpose can be excluded is by a conspicuous writing which states generally that there are no warranties extending beyond the description in the contract. § 4-2-316(2) C.R.S.1973. O'Neil admits reading the warranty disclaimer provision. Thus, we need not decide whether as a matter of law it was "conspicuous." See § 4-1-201(10), C.R.S.1973. And, we hold that the language "AS IS WITHOUT WARRANTY OF ANY CHARACTER expressed or implied" was sufficient to inform O'Neil that there was no implied warranty in effect for the truck. See § 4-2-316(2), C.R.S.1973. See also, Jordan v. Doonan Truck & Equipment, Inc., 220 Kan. 431, 552 P.2d 881 (1976).
Even though express warranties are also included in the above quoted language, still O'Neil asserts that summary judgment was improvidently granted against him on his claim that International Harvester breached the express warranties. The defendants argue that the trial court's ruling was correct. We agree with O'Neil.
Section 4-2-316, C.R.S.1973, provides that "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other . . . ." (emphasis added). Here, the oral warranties relied upon by O'Neil are totally inconsistent with the warranty exclusion clause of the contract. Section 4-2-316 further provides that, under these circumstances (but subject to the provisions of the Code governing the admission of parol evidence), a provision limiting an express warranty is inoperative.
Turning to the applicable parol evidence rule as set forth in § 4-2-202, C.R.S.1973, one finds that:
"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein, may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement . . . ."
Various commentators have noted the difficulty in applying §§ 4-2-316 and 4-2-202, C.R.S.1973, when, as here, the buyer alleges oral warranties by the seller, but the written contract contains both a warranty disclaimer clause and an "integration" provision. See 3 R. Duesenberg & L. King, Bender's Uniform Commercial Code Service § 6.06; J. White & R. Summers, Uniform Commercial Code § 12-4; Broude, The Consumer and the Parol Evidence Rule: Section 2-202 of the Uniform Commercial Code, 1970 Duke L.J. 881. While the courts divide on whether testimony as to the oral warranties may be admitted under these circumstances, see, e. g., Jordan, supra; Luther Williams, Jr., Inc. v. Johnson, 229 A.2d 163 (D.C.App.1967) we do not reach that issue in this case.
Where, as here, the buyer alleges the existence of oral warranties prior to execution of the written contract, as well as conduct following the sale (such as a commitment to pay for certain repairs) which tends to show that warranties were in fact made, there is a material issue of fact for resolution. That issue is whether the parties intended the written contract to be a final expression of their agreement, and if not, what the terms actually agreed upon by the parties consisted of. Further, we hold that, under such circumstances, evidence of both oral warranties and the conduct of the parties subsequent to signing the contract is admissible for purpose of resolving this issue. Thus, entry of summary judgment on this issue was error. See American Industrial Fastener Corp. v. Flushing Enterprises, Inc., 362 F.Supp. 32 (N.D. Ohio 1973).
O'Neil next claims that the trial court erroneously granted summary judgment against him on his claim that he was damaged by material misrepresentations of fact concerning the tractor and trailer. We agree since, here, various elements of the fraud claim present genuine issues of fact which should not be determined without a *866 trial on the merits. See Hatfield v. Barnes, 115 Colo. 30, 168 P.2d 552 (1946). Nor can a warranty disclaimer in the contract shield International Harvester from liability. See, e. g., Clements Auto v. Service Bureau Corp., 444 F.2d 169 (8th Cir. 1971).
Finally, O'Neil contends that the trial court erred in granting summary judgment in favor of the defendants on their first counterclaim which alleges damages resulting from the plaintiff's default on the retail installment contract. Again, we agree.
Until a trial on the merits is held to determine whether International Harvester is liable for breach of express warranty or fraud, and, if liable, what relief O'Neil is entitled to obtain, a determination as to O'Neil's liability for the balance due on the contract is premature.
That part of the judgment dismissing O'Neil's claim for breach of implied warranty is affirmed. The balance of the judgment is reversed and the cause remanded for further proceedings consistent with this opinion.
SMITH and BERMAN, JJ., concur.