Argued and submitted March 25, affirmed in part, reversed in part
and remanded October 5, reconsideration denied November 18,
petition for review denied December 20, 1983 (296 Or 236)

## FRAZIER,
*Appellant,*

*v.*

## CONSOLIDATED EQUIPMENT SALES,
INC., dba Northwest Roads, Inc.,
*Respondent.*

(78-2639-L-1; CA A23993)

670 P2d 153

834

Walter D. Nunley, Medford, argued the cause and filed the briefs for appellant.

William V. Deatherage, Medford, argued the cause for respondent. On the brief were John B. Rogers, and Frohnmayer, Deatherage, deSchweinitz & Pratt, Medford.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This is an action for damages alleged to have resulted from breaches of warranties in the sale of a used bulldozer. At the close of plaintiff's case, the trial court granted defendant's motion to dismiss for lack of evidence. Plaintiff appeals from the ensuing judgment. We reverse as to the claims for breaches of the express warranties and the implied warranty of merchantability.

■      In reviewing a ruling on a motion for involuntary nonsuit (presently identified as motion for judgment of dismissal, ORCP 54B.(2)), in favor of a defendant, the question on appeal is not what was found to have occurred but what a jury, viewing the evidence and all inferences in the light most favorable to plaintiff, might have found, if the case had been submitted to it. *Brewer v. Erwin,* 287 Or 435, 454, 600 P2d 398 (1979); *Yunker v. Kaiser Foundation,* 46 Or App 165, 168, 611 P2d 314 (1980). Viewed in that light, the facts may be summarized as follows.

Defendant is a sales and service agent for Allis-Chalmers heavy equipment. Plaintiff is a roadbuilder. In 1976, he was engaged in the construction of logging roads. In the spring of that year, he decided to replace his D-8 Caterpillar tractor with a larger, more efficient tractor with more horsepower. To that end, plaintiff and Wayne Robertson, a salesman from defendant's Medford office, traveled at company expense to defendant's San Diego agency to see a used Allis-Chalmers HD21-B tractor.

Extensive work was being done on the tractor. Defendant's employes told plaintiff that new rollers and rails would be installed and that "anything that needed to be replaced would be replaced." They said that "They'd go into the final drive and put it up in a like new condition"; all "necessary" repairs to the undercarriage would be done and that it would be in "very good condition"; the engine had been "overhauled and kitted" and since then had been run for only "two to three hundred hours"; and it would be in "like new condition" when repairs were completed.

On June 3, 1976, plaintiff and Robertson signed a sales contract for "one used HD21 B Allis Chalmers crawler tractor." The price was $68,750 less a trade-in allowance of

$28,000 for plaintiff's D-8 Caterpillar. On the back of the agreement under the heading "Warranty" is a printed paragraph purporting to provide certain warranties and exclude others. At the bottom under the heading "Warranty Detail" are listed the terms of four categories of warranty: "new," "rebuilt equipment," "fifty-fifty" and "as-is." The terms of each are different. ("As-is" means no warranty at all.) At the top of the front page the same categories are noted, each with a box to be checked if the equipment to be sold is covered by that particular warranty. On plaintiff's "customer copy" none of the boxes was checked. There was no discussion of what warranties, if any, would apply to the sale. Plaintiff did not read the back of the form. Both Robertson and plaintiff believed that the signature of Elmer Lewis, the manager of defendant's Medford office, was required before the contract of sale would be binding. The "office copy" of the June 3, 1976, agreement is signed by Lewis and the "50-50" warranty box is checked.

The HD21-B was shipped to Medford for further work. Lewis and other employes told plaintiff that they thought that when the work was complete "it would be in as good as new condition." Joe Pauley, defendant's district manager, explained the "capabilities" of the HD21-B to plaintiff, *i.e.*, that "the 21-B will out-do the old D-8, it will just walk right around it, push more dirt, it's a faster machine." Lewis told plaintiff the same thing.

On June 23, 1976, Lewis, Robertson and a representative of the company financing the purchase came to plaintiff's home to conclude the sale. Plaintiff and his wife had by this time read the warranty provisions of the June 3, 1976, agreement and were concerned that there was no written warranty, although several times between June 3 and 23, Lewis and Robertson had told them, "Don't worry, we'll stand behind the machine." Plaintiff's wife described the discussion that occurred concerning the warranty during the June 23, 1976, meeting as follows:

> "Well, I was still upset because there was nothing in writing about the warranty, and Elmer and Les and Wayne and I all discussed it, and at that time they still kept assuring me there was a warranty, and I didn't even want him to sign unless they put it in writing, but they just kept assuring us that there was no problem, that *we have the warranty like on a rebuilt*

*machine,* which they said was 90 days, and we specifically talked about it, because I was upset because it wasn't on there.

"* * * * *

"We never got anything in writing. It was just on their word." (Emphasis supplied.)

On the back of the June 3 sales agreement is printed the following:

"Rebuilt equipment - 500 hours after the equipment is first placed in operation by purchaser or 90 days whichever comes first."

The HD21-B was delivered July 12, 1976. The next day, the fuel pump seal blew. Thereafter, the HD21-B was plagued by numerous mechanical problems involving the engine, hydraulics, transmission and brakes. Plaintiff testified, "When I started having these breakdowns with the diesel leak [one month after the sale] and all that sort of thing leaking into the crankcase and stuff and I was down, then I was getting disgusted with it bad." It was down for repairs a total of 463 hours during the time plaintiff owned it. When the tractor was running, it was "short on power" and "knocked." It was later discovered that three of the six pistons had been installed backwards, causing them to strike the valves during operation and resulting in loss of power. An employe of plaintiff, who had worked with both plaintiff's D-8 Caterpillar and the HD21-B, testified that the HD21-B was broken down about 45 percent of the time, that the D-8 would "work circles around it" and push more dirt and that it could not move stumps that the D-8 could take out.

Defendant repaired or attempted to repair the tractor without charge for approximately 90 days. It continued to repair it after November, 1976, but charged plaintiff for the work. According to his wife, toward the end of 1976 or the first part of 1977, plaintiff told Lewis that he was "upset about the cat" and "all the down time and the repairs" and that "it wasn't doing the job it was supposed to do and he wished he had his 8 back and they would just take the thing back." Similar conversations occurred between plaintiff and company representatives thereafter. In a December, 1977, letter to defendant's Texas office, plaintiff detailed the repairs for which he had been charged, explained that the mechanical failures had caused "many hours of down time on our jobs" and

requested that defendant pay some of those expenses. He testified that, until then, "I just kept trying and trying and kept working, just like they kept working on that machine." In June, 1978, plaintiff sold the HD21-B for $40,000.

Plaintiff's complaint alleged that defendant had breached implied warranties of fitness for a particular purpose and merchantability (Counts I and II) and express warranties by defendant's agents (Count III) and claimed general, consequential and incidental damages. The case was tried to a jury.

The focus of three of the five assignments of error is whether it was error to dismiss the complaint.[1] The court reasoned that the June 3, 1976, sale agreement "precludes" the implied warranties of fitness and merchantability, "supersede[s]" prior oral warranties and "creates" an "express warranty" that the HD21-B "is a reasonably fit piece of used equipment." The court also construed plaintiff's Count III to plead "an express warranty of general merchantability" and found, in effect, that it was precluded by the parties' June 23, 1976, oral 90-day warranty. The trial court ruled:

"* * * There is one issue in the case regarding the 90 day warranty period, and the evidence on that is undisputed that the parties did agree to a 90 day warranty period and that the Defendant did in fact perform the obligation under that 90 day warranty period. In view of that undisputed evidence, it's clear that the liability of the Defendant terminated after they performed, after the 90 day warranty period, so there is no way you can return a verdict in favor of the Plaintiff, so I'm going to have to grant the Defendant's motion for a judgment of dismissal."

There was sufficient evidence to raise a jury question whether plaintiff suffered damage as a result of the tractor's condition and performance. Furthermore, we cannot say as a matter of law that plaintiff did not notify defendant of the alleged breaches of warranty "within a reasonable time," as required by ORS 72.6070(3)(a). Therefore, with respect to each count of the complaint, if there was evidence from which a jury could conclude that the particular warranty alleged applied to the sale and that the performance and condition of

[1] The remaining assignments of error involves an evidence question which, given our disposition of the case, we need not discuss.

the tractor, as alleged, constituted a breach of the warranty, the claim should not have been dismissed. *See* ORS 72.7140.[2]

## EXPRESS WARRANTIES

■ A jury could find that some representations made by defendant's agents to plaintiff before the sale constituted express warranties under ORS 72.3130:

"(1) Express warranties by the seller are created as follows:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"* * * * *"

Those representations include descriptions of the engine overhaul, the work that would be accomplished before delivery and the performance plaintiff could expect from this particular tractor as compared with his D-8. *See, generally,* 1 Bailey, Oregon Uniform Commercial Code, § 2.98 (1982). Furthermore, from the evidence of the subsequent performance of the tractor, the nature of the repairs required after the sale and the discovery of the improper piston installation, a jury could conclude that the tractor was not in conformity with those representations on the date of delivery. This assumes, of course, that the warranties, if made, were not thereafter precluded or disclaimed by the June 3, 1976, written sales contract or the oral 90-day warranty of June 23, 1976.

---

[2] ORS 72.7140 provides:

"(1) Where the buyer has accepted goods and given notification as provided in ORS 72.6070(3) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"(3) In a proper case any incidental and consequential damages under ORS 72.7150 may also be recovered."

█ ORS 72.2020 precludes contradiction of the terms of a written contract by prior or contemporaneous oral agreements when the writing was "intended by the parties as a final expression of their agreement" and permits the introduction of consistent additional terms, unless the court finds that the writing was also meant to be "a complete and exclusive statement of the terms of the agreement." The intent of the parties controls. We agree with the trial court's conclusion that the June 3, 1976, sales contract "is not a complete integration." However, even assuming that the description of the tractor (*i.e.,* "used") and the price terms stated were "final" under ORS 72.2020, they are not, as a matter of law, contradicted by oral warranties that may have been created by the representations of the tractor's condition and capabilities, and it would certainly be reasonable to conclude that those warranties are consistent with and serve to explain the term "used."

█ Because none of the four warranty "boxes" was checked on the document delivered to plaintiff and there is evidence that warranties were not discussed, we need not consider whether the representations contradict any of those terms. As discussed above, we also agree with the trial court's determination that the disclaimer of warranties in the June 3, 1976, document was of no effect. *See* ORS 72.2020; ORS 72.3160(1); *Miller v. Hubbard-Wray,* 52 Or App 897, 630 P2d 880, *mod* 53 Or App 531, 633 P2d 1 (1981).

██ The 90-day oral warranty agreed on by the parties at their June 23, 1976, meeting does not preclude the oral warranties discussed above. ORS 72.3170 requires that warranties, whether express or implied, be construed as consistent with each other and cumulative unless that construction is unreasonable. The statute further provides that, if that construction is unreasonable, the intention of the parties prevails. We cannot say as a matter of law that it would be unreasonable to construe representations of the tractor's mechanical history and condition as of the time of sale as consistent and cumulative with the vague terms of a later promise to warrant the tractor for 90 days. Such representations describe *what* is being sold. Neither would it be unreasonable to conclude that the representations of the tractor's performance capabilities were consistent with the 90-day guaranty. Assuming that that

construction would be unreasonable, a jury could certainly find that, because the earlier representations were part of the basis of the bargain, *see* ORS 72.3130, the parties intended that those express warranties control in case of conflict with the 90-day provision.[3]

For the reasons stated, we hold that the trial court erred in dismissing plaintiff's count for breach of express warranties.

## IMPLIED WARRANTIES

### (a) Fitness

Because there was insufficient evidence to raise a jury question whether defendant knew of a "particular purpose" for which the tractor was required and that plaintiff "relied" on defendant's "skill and judgment" to furnish such a tractor, as required by ORS 72.3150, it was not error to dismiss plaintiff's cause of action for breach of the implied warranty of fitness for particular purpose.

### (b) Merchantability

ORS 72.3140(1) provides:

"Unless excluded or modified as provided in ORS 72.3160, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale."

In this case, whether a jury could find for plaintiff on this breach of warranty claim depends on whether the warranty was excluded or modified by the June 3 or June 23 agreements.

The disclaimer set out on the back of the June 3 writing was not effective to exclude the warranty of merchantability. ORS 72.3160(2) requires that, in order to operate, the language must mention "merchantability" and be "conspicuous." Here, the type is not significantly larger than the rest of the printing on the page and is smaller than the explanation under "Warranty Detail." Only the paragraph heading "Warranty" stands out, and that heading suggests the *making* of a

---

[3] UCC § 2-317, comment 2 (1976), states that, to the extent that the seller has led the buyer to believe that all of the warranties can be performed, he is estopped from setting up any essential inconsistency as a defense.

warranty, *not* its exclusion. *See Seibel v. Layne & Bowler, Inc.,* 56 Or App 387, 391, 641 P2d 668 (1982). "Merchantability" is not mentioned. The trial court correctly concluded that no effect should be given to the attempted disclaimer.[4]

The more difficult question is whether under ORS 72.3170 the warranty of merchantability reasonably can be construed to be consistent and cumulative with the oral 90-day warranty. *See* White & Summers, Uniform Commercial Code § 12.7 (1972). If that construction is unreasonable, the intent of the parties determines which controls. In making that determination, the following rule applies: "Express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose." ORS 72.3170(3). In *Mountain Fuel Supply v. Central Engineering,* 611 P2d 863 (Wyo 1980) (involving the sale of a natural gas compressor), the court held that the evidence supported the trial court's conclusion that a 90-day warranty of repair and replacement of parts, albeit not an exclusive remedy, prevails over an implied warranty of merchantability. The court stated:

> "* * * [I]t seems clear [that] a construction of the express and implied warranties that would extend Central's obligation to repair and replace beyond the ninety-day warranty period would be unreasonable." 611 P2d at 872.

On the other hand, the court in *Koellmer v. Chrysler Motors Corporation,* 6 Conn Cir Ct 478, 276 A2d 807, 811 (1970), held that a "five years or 50,000 miles" warranty does *not* negate an implied warranty of merchantability, because it is not inconsistent with such a warranty.

As a practical matter, given the ambiguous terms of the 90-day warranty, it is difficult to say whether the merchantability provisions are inconsistent with it. *See* ORS 72.3140(2).[5] If inconsistency were found, the rule stated above

---

[4] The terms are vague, notwithstanding the reference to the "rebuilt" warranty. Furthermore, even assuming that the remedy is only repair or replacement, that remedy was not "expressly agreed to be exclusive" as required by ORS 72.7190(1)(b) and therefore was "optional."

[5] ORS 72.3140(2) provides:

"Goods to be merchantable must be at least such as:

"(a) Pass without objection in the trade under the contract description; and

that the express warranty would prevail is not absolute. It may be changed by evidence showing that the conditions existing at the time of contracting make preclusion of the implied warranty inconsistent or unreasonable. UCC § 2-317, comment 2 (1976). There is evidence to support such a finding in this case.[6] A more fundamental question is whether, in the case of an implied warranty of merchantability, more than inconsistency between the terms of that warranty and an express warranty is required before the implied warranty is deemed precluded; *i.e.*, whether, in addition, the requirements of ORS 72.3160 (disclaimer of warranties) must be satisfied.

■ In resolving this question these factors are significant: (1) whether the seller had opportunities to, but did not, expressly disclaim the implied warranty in writing; (2) whether the seller had opportunities to and was requested to reduce the terms of whatever warranty it was going to give to writing; and (3) whether the seller is primarily responsible for the ambiguity of the terms of the 90-day warranty. We find the admonition in White & Summers, *supra,* § 12.7 at 375 appropriate in this case:

"'* * * For two reasons we believe that courts should exercise some restraint in ruling that multiple warranties are inconsistent. First, 2-316 provides several devices for disclaiming warranties, and the comments to that section indicate a policy of preserving implied warranties unless the seller complies with the prescribed formal requirements. Second, in nearly all cases the seller drafts the sales agreement including the express warranty clause; in those cases it seems reasonable to place the burden of multiple warranties on the seller, since he had the opportunity to resolve any possible inconsistencies.'"

---

"(b) In the case of fungible goods, are of fair average quality within the description; and

"(c) Are fit for the ordinary purposes for which such goods are used; and

"(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

"(e) Are adequately contained, packaged and labeled as the agreement may require; and

"(f) Conform to the promises or affirmations of fact made on the container or label if any."

[6] *See* n 3, *supra.*

For these reasons, we cannot say as a matter of law that the 90-day warranty in this case precludes the application of an implied warranty of merchantability by operation of ORS 72.3170. Accordingly, we conclude that it was error to dismiss plaintiff's second count.

Affirmed in part; reversed in part; and remanded for further proceedings on Counts II and III based on an implied warranty of merchantability and express warranties.