**SIERRA DIESEL INJECTION SERVICE, INC., a Nevada corporation, Plaintiff,**

v.

**BURROUGHS CORPORATION, INC., a Delaware corporation, Defendant.**

**CV–R–84–535–ECR.**

United States District Court, D. Nevada.

March 17, 1987.

---

See also 651 F.Supp. 1371.

Haase, Harris & Morrison, Reno, Nev., for plaintiff.

Brown & Bain, P.A., Phoenix, Ariz., and Lionel Sawyer & Collins, Reno, Nev., for defendant.

## ORDER

EDWARD C. REED, JR., Chief Judge.

On March 2, 1987, an evidentiary hearing was held before this Court on two issues in this case:

(a) Whether there was integration of the written agreements between the parties for the purchase and sale of certain computer equipment and related merchandise.

(b) The conspicuousness of the disclaimers of the implied warranties of fitness and merchantability contained in the said agreements between the parties.

These are issues for the Court rather than the jury to decide.

In the fall of 1977, executives of plaintiff reached the conclusion that plaintiff needed an improved bookkeeping machine. Defendant's local office was located only a couple of blocks away from plaintiff's place of business. It was known that Burroughs was a substantial purveyor of bookkeeping equipment and so defendant was contacted. Salespersons of defendant called upon plaintiff to review its needs and recommended that instead of an improved bookkeeping machine a computer be acquired. Defendant's salespersons worked out a proposed computer setup which they represented to plaintiff's officials would meet plaintiff's needs for accounting for accounts receivable, accounts payable and inventory.

James Cathey, the president of plaintiff was in charge of acquisition of the new computer equipment for plaintiff. With the assistance of his daughter-in-law, Caroline Cathey, (who appears to have been in charge of plaintiff's accounting or bookkeeping department), Mr. Cathey negotiated the agreements for plaintiff with defendant's salespersons. Written contracts were prepared by defendant and delivered to plaintiff to provide for the purchase of the recommended computer equipment and related software. Mr. Cathey only scanned over the proposed agreements, except that he did actually read the portions which provided for the equipment to be purchased, the price, the parties involved and the delivery date. He was not familiar with computer terminology and in signing the agreements he was relying upon the representations of defendant's personnel as to what computer equipment and software should be purchased and what it was expected to accomplish. The contracts merely identified the items to be purchased according to defendant's assigned designations of certain names and numbers which to some extent contained a description in general terms of the particular items. A reasonable person in Mr. Cathey's position would not have had any way of knowing from the contracts themselves what he was purchasing or what the equipment would do. Mr. Cathey signed the agreements in behalf of plaintiff, or they were signed for him in his name with his authorization.

Each of the equipment agreements contained the following clause (the integration clause):

"This Agreement constitutes the entire agreement, understanding and representations, express or implied between the Customer and Burroughs with respect to the equipment and/or related services to be furnished and this Agreement supersedes all prior communications between the parties including all oral and written proposals." *

■ The issue to be addressed in determining integration of a written agreement is whether the agreement is to be recognized as the sole agreement between the parties, barring any other prior or contemporaneous representations or agreements. The fundamental test of integration is whether the parties intended the writing as a final expression of their agreement to the terms included therein. While the wording of the integration clause in the agreement is some evidence of integration it is not conclusive.

Mr. Cathey was an experienced businessman with some knowledge of warranties, but was not particularly versed in contract law or computer science. He scanned and in part read the agreements, as noted above, but he did not understand that the integration clause meant that the representations of defendant's salespersons as to what the computer could accomplish might be nullified. On the other hand, what the computer would accomplish was an essential part of the agreement of the parties. The equipment and software were useless to plaintiff unless they would accomplish the specific needed tasks in question. They were just so much useless metal, plastic and paper if they would not do the job

---

* The wording of the integration clause in the software agreements is almost identical. Any variances in the wording of the integration clauses of the equipment as opposed to the software agreements are of no significance in the analysis made here.

required for plaintiff's business. A reasonable buyer would have insisted that these representations as to what the computer would do be included in the agreement if he believed they would otherwise not be binding on the seller.

Provided he understood the possible legal effect of the integration clause in question, a reasonable businessman in Mr. Cathey's position would have insisted that the prior written and oral representations which had been made regarding the computer be included in the written agreement. The preponderance of the evidence is that Mr. Cathey did not understand that the integration clause would relieve defendant of the representations it had made as to what the computer would do.

From the standpoint of defendant, on the other hand, it wanted to sell the equipment and this necessitated making the representations which were made. Yet, defendant apparently may have believed or hoped that the integration clause would protect it from responsibility or liability for the representations of its salespersons, so long as they were not included in the agreement. Plaintiff, however, was relying upon defendant's expertise as to what the purchase of these items would accomplish. From the standpoint of plaintiff, there could be no agreement at all for the sale of the computer absent the accompanying representations.

█ Integration requires a mutual intent by both of the contracting parties that the written agreement contain all of the agreements of the parties and the further mutual intent that the written agreement is intended to be the sole agreement, barring reliance upon any other prior or contemporaneous representations or agreements. The preponderance of the evidence is that there was no such mutual intent of the parties in this case that the agreement be integrated.

The contracts were not integrated.

█ Next we turn to the issue of conspicuousness. Were the disclaimers of the implied warranties of fitness and merchantability contained in the contracts "conspicuous?" A term or clause is conspicuous when it is written so that a person against whom it is to operate ought to have noticed it. There are some more specific criteria which are of help in determining conspicuousness. In this connection we may ask, is the disclaimer:

(1) in capital letters;
(2) in bold type;
(3) set apart from the text.

The disclaimers in question meet only one of these three tests of conspicuousness. The disclaimers are in capital letters. However, the disclaimers are not in bold type and are not set apart from the remainder of the text. The disclaimers fail to meet two of these three standards for conspicuousness.

█ When one reads the back of the contracts where the disclaimers are located the printing seems to run together. There is nothing to make the disclaimers particularly stand out, to stick out as a unit, or catch your attention. While the letters used for the disclaimer are larger and for this reason may appear slightly darker than the remainder of the printing on the reverse sides of the agreements, by contrast the title at the top of the back page of each of the agreements, reading "TERMS AND CONDITIONS" is in bold type significantly darker, set apart and does catch your eye. The disclaimer does not. The test of conspicuousness is basically a visual test, one of the appearance of the disclaimer, rather than the wording of the disclaimer, what it says, or the way it is written, although obviously the wording of a disclaimer must disclaim. If one applies these tests the disclaimers are not conspicuous.

█ As noted, the disclaimers are on the reverse side of each of the contracts involved here. While the contracts involving the software do direct the reader to the reverse side of the page for the disclaimer of warranties, the larger (in dollar amount) equipment contracts (for purchase of the computer equipment) do not. The equipment contracts simply caution the reader in general terms to read the reverse side of the page. So far as the equipment contracts are concerned this is an additional

strike against the claim of conspicuousness.

The equipment contracts do contain some other clauses that are conspicuous, e.g., on the face of the agreement the provision that a late payment charge will be made for late payments and, as mentioned above, the title on the back of the agreement, "TERMS AND CONDITIONS." But the warranty disclaimers are not conspicuous.

On the reverse side of the software agreements the general title "TERMS AND CONDITIONS" is conspicuous as are the titles of the numbered paragraphs and the limitation on warranty with respect to release of program products classified in category C. However, the disclaimer of warranties of merchantability and fitness is not conspicuous.

The foregoing shall constitute findings of fact and conclusions of law for the purpose of making the determinations the Court is required to make at this time. These findings and conclusions are based upon the limited evidentiary hearing which was held for the express purpose only of deciding the two issues at hand. These findings will not be binding upon the parties with respect to other issues which may be encountered in the trial of the case.

This Court now finds, orders and adjudges as follows:

    (a) The written agreements in question were not integrated.

    (b) The disclaimers of implied warranties of fitness and merchantability contained in the written agreements in question were not conspicuous.