**SIERRA DIESEL INJECTION SERVICE, INC., Plaintiff–Appellee,**

v.

**BURROUGHS CORPORATION, INC., Defendant–Appellant.**

**No. 87–2373.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1988.

Decided May 9, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc Nov. 16, 1989.

Michael F. Bailey and Lawrence G.D. Scarborough, Brown & Bain, P.A., Phoenix, Ariz., for defendant-appellant.

M. Craig Haase, Haase and Harris, Reno, Nev., for plaintiff-appellee.

* Judge Canby was drawn to replace Judge Anderson.

** Honorable Albert Lee Stephens, Jr., Senior United States District Court for the Central District of California, sitting by designation.

1. The relevant portions of the letter are as follows:

> I wish to thank you for your interest and attendance at our demonstration of the new B80 computer last week. I hope you have a better understanding of what the B80 is and what it can do to help Sierra Diesel Injection Service. We firmly believe that it can put your inventory, receivables, and invoicing under complete control, which will mean to your firm a big monetary savings, as well as a more cost efficient operation. Plus, it will free Caroline from much of her routine and time consuming duties and will allow her to use her time on more valuable undertakings.

Before CANBY,* and BOOCHEVER, Circuit Judges, and STEPHENS **, Senior District Judge.

STEPHENS, Senior District Judge:

Sierra Diesel Injection Service, Inc. (Sierra Diesel) is a family owned and operated business that services the fuel injection portions of diesel engines and sells related diesel engine parts. In September 1977, 19 year old Caroline Cathey, the daughter-in-law of the Sierra Diesel's owner and operator James Cathey, worked as the company bookkeeper. She went to the Reno, Nevada branch office of the Burroughs Corporation (Burroughs) to purchase a posting machine to speed up Sierra Diesel's invoicing and accounting. The salespeople at Burroughs told Caroline Cathey that Sierra Diesel should buy a B–80 computer (B–80) instead of a posting machine. Caroline and James Cathey attended a demonstration of the B–80 at the Burroughs office. After the demonstration, Burroughs' sales staff sent a letter to Mr. Cathey which said that the B–80 "can put your inventory, receivables, and invoicing under complete control." [1] The letter also informed Mr. Cathey that the information in the letter was "preliminary" and that "the order when issued shall constitute the only legally binding commitment of the parties."

> After the initial survey that myself and Tim Tift conducted, plus through our discussions with you here at the branch, we believe we have a good understanding of your problems and needs. As we see it, you need to get better control of your inventory, improve invoicing and take better charge of your receivables. The system we recommend will allow you to do all this plus provide you with additional management reports, which will help you manage your operations even better.
> ....
> The preliminary information and expression of confidence set forth in this recommendation of Burroughs products and/or services are submitted for your consideration and guidance only in the hope that we may be favored with your order. Since this proposal is preliminary only, the order when issued shall constitute the only legally binding commitment of the parties.

In October 1977, Mr. Cathey decided to purchase the B–80. Sierra Diesel and Burroughs signed various contracts for the sale of hardware and software and for maintenance service. Mr. Cathey's highest level of formal education was a high school degree. At the time he bought the B–80 he was not knowledgeable about computers. He had a general knowledge of warranties and their limitations from the warranty service work Sierra Diesel did for diesel component parts manufacturers, but he did not understand the meaning of "merchantability." He read the contracts from Burroughs to see that they contained the correct price information and product description and he glanced at the back of the contract to see, as he put it, that "I'm not actually signing away the deed to my home or something of this nature."

The B–80 computer did not perform the invoicing and accounting functions for which it had been purchased. It experienced basic equipment breakdowns and was unable to "multi-program." Sierra Diesel personnel complained to the Burroughs service personnel. Burroughs responded to these complaints and its staff attempted to solve the problems and also attempted to repair the system during their regularly scheduled visits under the Maintenance Agreement. Eventually, the Burroughs staff recommended to Sierra Diesel that it purchase a different Burroughs computer (B–91) to remedy the problems. Sierra Diesel purchased the B–91 and took delivery in February 1981. The B–91 computer was no better able to perform the invoicing and accounting functions than the B–80. After additional unsuccessful attempts by Burroughs employees to correct the problems, Sierra Diesel employed an independent computer consultant who concluded that the Burroughs computers would never perform the functions for which they had been purchased. Sierra Diesel bought another computer from a different company. In 1984, Sierra Diesel initiated the present litigation.

Sierra Diesel sued Burroughs on six causes of action relating to Sierra Diesel's dissatisfaction with the two computers. Burroughs moved for summary judgment on the grounds that the contracts were fully integrated and that the September 27th letter was not a part of the contract, that the warranties had been excluded, and that the statute of limitations had run. The case was referred to a Magistrate of the district court who recommended that the motion be granted on statute of limitations grounds. The district court rejected the recommendation. *Sierra Diesel Injection Service v. Burroughs Corp. Inc.*, 648 F.Supp. 1148 (D.Nev.1987). Burroughs moved for reconsideration of the statute of limitations issue and asked the court to rule on the integration and exclusion of warranty claims. The court denied reconsideration and ordered a trial on the integration and exclusion of warranty questions. *Sierra Diesel Injection Service v. Burroughs Corp., Inc.*, 651 F.Supp. 1371 (D.Nev.1987). After the trial, the court held that the exclusion of warranties clauses were not conspicuous and that the parties had not intended the contract to be fully integrated. *Sierra Diesel Injection Service v. Burroughs Corp., Inc.*, 656 F.Supp. 426 (D.Nev.1987).

After the trial court's ruling, Sierra Diesel and Burroughs entered into a settlement in which the court dismissed with prejudice all of Sierra Diesel's claims as to the B–91 and to most of the claims as to the B–80. The parties stipulated that Burroughs had breached its contracts with Sierra Diesel by failing to put Sierra Diesel's inventory, receivables, and invoicing under complete control and that the B–80 was not merchantable. The trial court awarded Sierra Diesel $44,000 in damages. The judgment reserved to Burroughs a right to appeal the court's integration and conspicuousness rulings. Burroughs timely appealed. This court has jurisdiction under 28 U.S.C. § 1291. This is a diversity case and Nevada law controls. Both the software and hardware sales agreements provide that "the laws of the State of Michigan shall govern...." We need not decide whether, under Nevada law, the small type reference to application of Michigan law would be given affect because the parties

do not argue that Michigan law differs from that of Nevada.

## I. *INTEGRATION*

The trial court found that the printed form contracts supplied by Burroughs did not represent a final integrated contract. The court considered the September 27 letter and found that the representations in the letter were part of the agreement between the parties.

█ Nevada has adopted the Uniform Commercial Code's parol evidence rule in NRS § 104.2202.[2] Under the code, a trial court must make an initial determination that a writing was "intended by the parties as a final expression of their agreement." This is a question of fact and the trial court's findings are reviewed for substantial error. *Transamerica Oil Corp. v. Lynes, Inc.*, 723 F.2d 758, 763 (10th Cir. 1983); R. Anderson, *Uniform Commercial Code* § 2–202:33 (1983).

█ In deciding whether a writing is final the most important issue is the intent of the parties. *Interform Co. v. Mitchell*, 575 F.2d 1270, 1275 (9th Cir.1978); *Frazier v. Consolidated Equipment Sales Inc.*, 64 Or.App. 833, 670 P.2d 153, 158, *review denied*, 296 Or. 236, 675 P.2d 490 (1983). One factor is the sophistication of the parties. *S.M. Wilson & Co. v. Smith Intern Co.*, 587 F.2d 1363, 1366 (9th Cir.1978). The trial court found that Mr. Cathey was not a sophisticated businessman, that he had little knowledge of computers or of contract terms, and that he fully expected that the representations made to him by Burroughs' representatives were part of the contract. The trial court also found that Burroughs knew of Mr. Cathey's computer needs and knew that his sole purpose for buying the computer was to get Sierra Diesel's inventory, receiving, and invoicing under control and that Mr. Cathey would not have purchased the B–80 if it were not capable of putting his inventory, receiving, and invoicing under control. The trial court's findings are supported by the record.

█ Burroughs argues that the presence of a merger clause should, as a matter of law, determine that the contract was integrated, and some courts have so held. *Redfern Meats Inc. v. Hertz Corp.*, 134 Ga.App. 381, 215 S.E.2d 10 (1975); *Rajala v. Allied Corp.*, 2 UCCRS 2d 1203, 66 B.R. 582 (1986). However other courts and commentators have rejected this view, especially when the contract is a pre-printed form drawn by a sophisticated seller and presented to the buyer without any real negotiation. Whether several documents are integrated to form one contract is a factual question and the presence of a merger clause while often taken as a strong sign of the parties' intent is not conclusive in all cases. *Enrico Farms Inc. v. H.J. Heinz Co.*, 629 F.2d 1304, 1306 (9th Cir.1980); *J.A. Zwierzycki v. Owens*, 499 P.2d 996 (Wyo.1972); Restatement (Second) of Contract § 209 comment b, § 216 comment e; and R. Anderson, *supra*, § 2–202:25.

█ The agreement between Burroughs and Sierra Diesel involved at least four different kinds of writings: the contract for the sale of the hardware, the contracts for the sale of the software, the contract to finance the transaction through what was on its face a lease, and the contract for service and maintenance. No one writing stands alone, each must be read with reference to another document. The description of the computer components does not lead to recognition of how they relate to one

---

**2.** NRS § 104.2202 reads as follows:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporary oral agreement but may be explained or supplemented:

1. By course of dealing or usage of trade (NRS 104.1205) or by course of performance (NRS 104.2208); and

2. By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

another without additional explanation. The hardware could not function without the software. The lease appears on its face to be inconsistent with a sale. It is not possible to understand what the basic transaction was intended to be without some coordinating explanation. It is understandable that Mr. Cathey believed that he was justified in looking beyond the four corners of any one writing for the meaning of his agreement with Burroughs.

Additionally, the trial court found that Burroughs' efforts to repair the B–80 showed that Burroughs intended to live up to the representations made in the September 27 letter. *Cf. O'Neil v. International Harvester Co.*, 40 Colo.App. 369, 575 P.2d 862 (1984) (efforts by seller to repair truck show seller's intent to warrant truck). Burroughs did not advise Sierra Diesel that the repairs were undertaken without prejudice to Burroughs' contention that there were no warranties. Burroughs' efforts are also evidence of Burroughs' knowledge of Mr. Cathey's expectations as to the scope and terms of their agreement.

■ An additional ground for upholding the trial court is that the statements in the September 27 letter are express warranties that the B–80 computer would put Sierra Diesel's inventory, receivables, and invoicing under complete control. These representations became part of the basis of the bargain. NRS 104.2313. Under NRS § 104.2316(1) when an express warranty is read together with a warranty disclaimer, the express warranty is given effect over the disclaimer. The warranty disclaimer clauses in the printed form contracts were ineffective to avoid the express warranty.[3]

## II. CONSPICUOUSNESS OF THE WARRANTY EXCLUSION

The trial court ruled that the warranty exclusion clauses in the Burroughs contracts were not conspicuous and therefore not effective to waive the implied warranty of merchantability.

■ Warranty exclusions are permitted under the UCC § 2–316 to allow parties to bargain to allocate the risk of loss. However, exclusions of warranties are generally disfavored, and standardized take it or leave it form contracts such as the one in this case are construed against the drafter. They are subject to the general obligation of good faith and of not imposing unconscionable terms upon a party. Restatement (Second) of Contracts § 211. Nevada has adopted the UCC waiver of warranty language in NRS § 104.2316.[4] According to official comment one the purpose of the warranty waiver section is to "protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty and permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise."

Conspicuousness is defined by NRS § 104.1201(10): "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.... Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." Official comment 10 notes that "the test is whether attention can reasonably be expected to be called to it."

---

3. The trial court's judgment speaks of "representations" and a "breach of contract," but such language describes a cause of action for breach of express warranty. Furthermore, Sierra Diesel's trial court pleadings amply state a cause of action for breach of express warranty under the federal court's liberal pleading requirements. Finally, a holding on a breach of express warranty, although not explicitly argued by Sierra Diesel, should come as no surprise to Burroughs since Burroughs in its opening appellate brief describes Sierra Diesel's cause of action as one for breach of express warranty.

4. NRS § 104.2316 reads in relevant part:

2. Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be in writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

"Whether a term or clause is 'conspicuous' or not is for decision by the court." NRS § 104.1201(10). Review of the trial court's finding is *de novo*. *Collins Radio Co. of Dallas v. Bell*, 623 P.2d 1039, 1051 (Okla.App.1980); *J & W Equipment, Inc. v. Weingartner*, 5 Kan.App.2d 466, 618 P.2d 862, 864 (1980).

Both the hardware and software agreements contained the following warranty disclaimer, "Except as specifically provided herein, there are no other warranties, express or implied, including, but not limited to, any implied warranties of merchantability or fitness for a particular purpose." The disclaimers are located on the back side of the agreements. They are in substantially smaller and lighter type, both in color and in contrast, compared to the language on the face of the Burroughs' agreements. The letters used for the disclaimers are larger than some of the other printing on the back sides of the agreements but, by contrast with other letters and printing on the back side, the disclaimer letters are not as dark, bold, set apart or eye catching as other letters on the back side of the agreement. The warranty disclaimer contained in paragraph 4 on the back side of the hardware agreement is in 7 point type and slightly darker print, although hardly bold face. In the software agreement the warranty disclaimer is in all caps and is not bold face type. It is also only 7 points high. Rule 32 of the Fed.R. App.P. requires that all printed material in briefs submitted to this court be a minimum of 11 points high or almost twice the size of the disclaimers buried on the back side of the Burroughs agreements.[5]

On the front of the software agreement a sentence standing alone in large capital bold letter directs the signor to read the warranty terms on the back, "THE TERMS AND CONDITIONS, INCLUDING THE WARRANTY AND LIMITATION OF LIABILITY, ON THE REVERSE SIDE ARE PART OF THE AGREEMENT." The back of the contract contains 14 separately numbered and titled sections, some of which are further divided into paragraphs. The ninth

section, entitled WARRANTY, contains the exclusion clause in the fourth paragraph of the section. The clause is in all capital letters, but it is not bold type. The only words in bold on the back of the form are the title headings and the words *TERMS AND CONDITIONS* at the top of the page.

Whether a disclaimer is conspicuous is not simply a matter of measuring the type size or looking at the placement of the disclaimer within the contract. A reviewing court must ascertain that a reasonable person in the buyer's position would not have been surprised to find the warranty disclaimer in the contract. *J. & W. Equipment Inc. v. Weingartner*, 5 Kan.App.2d 466, 618 P.2d at 866. A factor to consider is the sophistication of the parties. *See e.g., Collins Radio v. Bell*, 623 P.2d at 1051 ("we note that the disclaimer [in capital letters] is of *minimal* compliance, and we do not venture to state what factors might alter this determination in future cases outside of the sophistication of the buyer.") (emphasis in the original); *FMC Finance Corp. v. Murphree*, 632 F.2d 413, 419 (5th Cir.1980); *Gilbert & Bennett Mfg. Co. v. Westinghouse Electric Corp*, 445 F.Supp. 537 (D.Mass.1977); *Avenell v. Westinghouse Electric Corp.*, 41 Ohio App.2d 150, 324 N.E.2d 583 (1974). Also relevant as to whether a reasonable person would have noticed a warranty disclaimer are the circumstances of the negotiation and signing.

The trial court found that Mr. Cathey was not familiar with computers or with contracts. Mr. Cathey read the front of the contracts, but did not notice the warranty disclaimer clauses on the back. Given Mr. Cathey's lack of sophistication in the field of contracts and the written and oral representations made by Burroughs, it is not surprising that it would require more than a collection of standardized form contracts on various subjects involved in a transaction to notify a reasonable person in Mr. Cathey's position that the B–80 came without any warranty of merchantability.

Burroughs faults the trial court for holding that all warranty disclaimers must be

5. Copies of the warranty disclaimers appear in the appendix to this opinion.

in capital letters and in bold type, but the trial court did not rule in so mechanistic a fashion. The trial court's rulings consider type size and boldness as factors in an overall analysis and also the fact that the disclaimers were on the back of the page. *Cf. Sellman Auto, Inc. v. McCowan,* 89 Nev. 353, 513 P.2d 1228, 1230 (1973) (Under Uniform Sales Act, a waiver of an express warranty printed on the back of a contract is not effective unless the buyer is actually aware of it.) The trial court also considered the relative sophistication of the parties.

Burroughs points to two Nevada cases interpreting NRS § 104.2316. In *Bill Stremmel Motors, Inc. v. IDS Leasing Corp.,* 89 Nev. 414, 514 P.2d 654 (1973), the Nevada Supreme Court affirmed a trial court judgment holding that a warranty exclusion clause in all capital letters was conspicuous. In *Stremmel* the trial court found that both parties were sophisticated, that there was no evidence that the buyer had not read the contract, and that the disclaimer was conspicuous. There is a marked difference in the dispute between Burroughs and Sierra Diesel. The district court found that Mr. Cathey was not a sophisticated buyer, he had not read the contract, and the trial court found that the disclaimers were not conspicuous. In the second case, *Sierra Creek Ranch v. J.I. Case,* 97 Nev. 457, 634 P.2d 458 (1981), the Nevada Supreme Court again affirmed a trial court finding that an exclusion clause was conspicuous. Both *Stremmel* and *Sierra Creek* show that a disclaimer in capital letters that mentions merchantability can be effective to exclude warranties. They do not hold that capital letters as a matter of law will be effective in all cases.

In the circumstances of this case, the district court's finding that the warranty disclaimer clauses were not conspicuous is not erroneous.

## III. *EFFECT OF THE LEASE*

Sierra Diesel argues that the contract between Sierra Diesel and Burroughs is abrogated by the lease between Sierra Diesel and Lend–Lease, Inc., the named lessor in the transaction.

■ It is common for computer buyers to extend their payments over time. *See* Annotation, *Computers—Buyer–Lessee Defenses,* 37 ALR4th 110. Often they use writings that are denominated as leases but are in fact financing security arrangements. The name given to the instrument is less important in determining its true nature than is the intent of the parties and the economic reality of the transaction. R. White & J. Summers, *Uniform Commercial Code,* § 22–3 (2d ed. 1980).

■ In *Burroughs v. Century Steel,* 99 Nev. 464, 664 P.2d 354 (1983) the Nevada Supreme Court examined the question of what constitutes a true lease and what constitutes a financing agreement and listed several factors. Applying the factors noted in *Century Steel,* Sierra Diesel's lease was in fact a financing arrangement because Sierra Diesel was responsible for maintenance, for all taxes, and for loss due to damage to the computer. Furthermore, Sierra Diesel was required to indemnify the leasing company against loss that resulted from the computer's malfunction. Sierra Diesel selected the computer without assistance from Lend–Lease. Lend–Lease did not manufacture the computer. Burroughs shipped the computer directly to Sierra Diesel and not to Lend–Lease, which never had possession of the computer. Finally, the "lease" nowhere explains the relation of the "lease" to the documents of sale between Sierra Diesel and Burroughs (a factor which supports the trial court's finding that the contracts were not integrated).

Sierra Diesel argues that notwithstanding all of the factors listed above, the arrangement with Lend–Lease should be regarded as a true lease because by its terms it requires Sierra Diesel to return the computer equipment to Lend–Lease at the end of the 60 month term. Mr. Cathey's deposition testimony reveals his understanding that Sierra Diesel was to own the B–80 at the end of the 60 month term. Furthermore, Sierra Diesel's whole law suit is premised on the existence of a sales con-

tract with Burroughs supplemented by a financing agreement with Lend–Lease.

The agreement between Sierra Diesel and Lend–Lease is in reality a financing arrangement and does not abrogate the contract between Sierra Diesel and Burroughs.

## CONCLUSION

The trial court's judgment is AFFIRMED.

## APPENDIX

The hardware agreement contains the following warranty clause and disclaimer:

4. Burroughs warrants: (1) Burroughs has title to the equipment and the right to convey title to Customer; and (2) for a period of one year from shipment, the equipment shall be free from defects in material and workmanship under normal use and service.

Written notice and an explanation of the curcumstances of any claim that the equipment has proved defective in material or workmanship shall be given promptly by Customer to Burroughs. Customer's sole and exclusive remedy in the event of defect is expressly limited to the correction of the defect by adjustment, repair, or replacement at Burroughs election and sole expense, except that there shall be no obligation to replace or repair items which by their nature are expendable.

No representation or other affirmation of fact, including but not limited to statements regarding capacity, suitability for use, or performance of the equipment, shall be or be deemed to be a warranty or representation by Burroughs for any purpose, nor give rise to any liability or obligation of Burroughs whatsoever.

EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, THERE ARE NO OTHER WARRANTIES EXPRESS OR IMPLIED INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

If Customer employs any non-Burroughs attachment, feature or device on the equipment, or any part thereof, furnished by Burroughs, which has not been approved in writing by Burroughs, Burroughs shall not be liable under this warranty. The approval of the use of any non-Burroughs attachment, feature or device shall not be deemed to be a representation, warranty or undertaking by Burroughs regarding such non-Burroughs equipment including its performance in conjunction with the Burroughs equipment.

The software agreement contains the following warranty clause and disclaimer:

9. *WARRANTY*

Each licensed Program Product classified in Category A or B is warranted to conform to the design specifications for that release as designated in the Program Product specification or similar applicable release issued by Burroughs. EACH RELEASE OF A PROGRAM PRODUCT CLASSIFIED IN CATEGORY C IS LICENSED ON AN "AS IS" BASIS WITHOUT ANY WARRANTY.

This warranty is applicable to each unaltered release of the Licensed Program commencing on the date of its delivery to the Customer and terminating one year from the date of such delivery, ninety (90) days after the date on which Burroughs has released a revision thereof or upon termination of the license, whichever is earlier.

Customer agrees that its sole and exclusive remedy and Burroughs' sole obligation, if a Licensed Program warranted hereunder fails to conform to the applicable design specifications and Customer advised Burroughs of such failure in writing during the term of the warranty, is for Burroughs to provide programming services to attempt to correct any defect. For purposes of this Agreement non-conformance to design specification and term "defect" shall mean only significant deviations from the design specifications for such current release of the Licensed Program.

EXCEPT AS SPECIFICALLY PROVIDED HEREIN, THERE ARE NO OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

CANBY, Circuit Judge, concurring in part and dissenting in part:

I concur in much of Judge Stephens' well-crafted opinion. Although the question is a close one for me, I agree that we must affirm the district court's ruling that the written contracts were not integrated. My view is largely based on the standard of review; I cannot say that the district court clearly erred in finding that the parties did not intend the written contracts to be a complete and final expression of their agreement. For the reasons set forth by Judge Stephens, Sierra Diesel may therefore recover on its claim of express warranty.

I also agree that the lease agreements entered by Sierra Diesel were actually financing agreements, and did not abrogate the contracts between Sierra Diesel and Burroughs.

My disagreement with the majority concerns the question whether the disclaimers of implied warranties were conspicuous. On that issue, our standard of review is de novo. *See Delhomme Industries Inc. v. Houston Beechcraft,* 669 F.2d 1049, 1061 (5th Cir.1982). My own view of the contracts leads me to conclude that the clauses are conspicuous within the meaning of Nev.Rev.Stat. § 104.1201(10).

The software agreement is the clearest. In a separate paragraph, in large, capital bold type immediately above the signature line on the face page, there appears the following sentence: "THE TERMS AND CONDITIONS, INCLUDING THE WARRANTY AND LIMITATION OF LIABILITY, ON THE REVERSE SIDE ARE PART OF THIS AGREEMENT." That language is possibly the most conspicuous single item in the entire agreement. On the reverse side, under the section headed "WARRANTY" appears the disclaimer of implied warranties, in a separate paragraph, all in capital letters. These provisions, in my view, would call a reasonable buyer's attention to the disclaimer. *See Hunter v. Texas Instruments, Inc.,* 798 F.2d 299, 303 (8th Cir.1986).

The disclaimer in the hardware agreement presents a closer question. There is no reference to warranties or limitation of liability on the front of the contract, but the last line, in capitals, before the signature states that the customer has agreed to all terms and conditions including those on the reverse side. The reverse side contains 15 numbered sections, in print of small size and low contrast that discourages reading. Nevertheless, in the middle of the left column, in much larger print and all capitals, there appears the separate paragraph stating: "EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, THERE ARE NO OTHER WARRANTIES EXPRESS OR IMPLIED INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY OF FITNESS FOR A PARTICULAR PURPOSE." By location and prominence, this clause is probably the most conspicuous one on the page. I conclude that it would notify the reasonable buyer. Such a provision was described as "conspicuous" in *Earman Oil Co. Inc. v. Burroughs Corp.,* 625 F.2d 1291, 1298 (5th Cir.1980), and *Badger Bearing Co. v. Burroughs Corp.,* 444 F.Supp. 919, 922 (E.D.Wis.1977), *aff'd,* 588 F.2d 838 (7th Cir.1978), although the question of conspicuousness was not actively contested in those cases. The fact that the disclaimer was on the back side of the contract ought not to render it ineffective, so long as the language on the front side prominently referred to the terms and conditions on the back. *See Jaskey Finance and Leasing v. Display Data Corp.,* 564 F.Supp. 160, 165 (E.D.Pa.1983).

Because I conclude that the disclaimers of implied warranties were conspicuous, I would reverse that part of the judgment that separately awards damages for breach of implied warranty. *See Bill Stremmel Motors, Inc. v. IDS Leasing Corp.,* 89 Nev.

414, 514 P.2d 654 (1973); *Sierra Creek Ranch v. J.I. Case,* 97 Nev. 457, 634 P.2d 458 (1981). In all other respects, I join the majority in affirming.